Docket No. 98800.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee v. ANDRE
D. ROBINSON, Appellant.

*Opinion filed June 22, 2006.*

JUSTICE GARMAN delivered the judgment of the court, with
opinion.

Chief Justice Thomas and Justices Fitzgerald, Kilbride, and
Karmeier concurred in the judgment and opinion.

Justice Freeman dissented, with opinion, joined by Justice
McMorrow.

Justice Freeman dissented from the denial of rehearing, with
opinion.

## OPINION

Defendant, Andre Robinson, was convicted after a jury trial in the
circuit court of Cook County of driving with a blood-alcohol
concentration of 0.08 or more (625 ILCS 5/11–501(a)(1) (West
2002)) and of driving while under the influence of alcohol (DUI)
(625 ILCS 5/11–501(a)(2) (West 2002)). He was sentenced to an 18-
month period of court supervision and ordered to undergo drug
testing during that period and to pay a $325 fine. His conviction was
affirmed on appeal, although the fine imposed by the trial court was

vacated and the cause remanded for a determination of the appropriate amount of a fine, if any. 349 Ill. App. 3d 622.

We granted defendant's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315). In his petition, defendant raised a single issue–whether the trial court erred by denying his request for a *Frye* hearing (*Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)) on the question of the admissibility of testimony regarding results of the horizontal gaze nystagmus (HGN) test. For the reasons that follow, we dismiss the appeal.

## BACKGROUND

The appellate court opinion provides a complete summary of the evidence adduced at trial, including details of the traffic stop and field sobriety testing conducted by Officer Barber. In brief, the officer testified that after stopping a vehicle for improper lane usage, he observed that the driver, defendant, had bloodshot eyes, slurred speech, and a strong odor of alcohol on his breath. When defendant got out of the car, his balance was unsteady and he swayed from side to side. Defendant agreed to perform two field sobriety tests. The officer testified that defendant failed the one-leg stand test because he was unable to stand on one foot while holding the other foot off the ground for 30 seconds. The officer also testified that he administered the HGN test in accordance with the training he had been given. He observed an involuntary jerking of defendant's eyeballs as the defendant attempted to track a moving object, the tip of the officer's pen, while the officer moved it from left to right. As a result of this involuntary movement, known as nystagmus, the officer concluded that defendant was under the influence of alcohol. Defendant declined to perform two additional field sobriety tests, the walk-and-turn and finger-to-nose tests.

For purposes of the present appeal, only the procedural history of the case is relevant. Prior to trial, defendant filed a motion *in limine* seeking to bar admission of evidence regarding the results of the HGN test unless the State first established the reliability of the test. The motion argued that HGN tests are not generally accepted in the relevant scientific community and that, as a result, the State should be required to lay a proper foundation for admission of the HGN testimony in a *Frye* hearing.

The motion cited this court's opinion in *People v. Basler*, 193 Ill. 2d 545 (2000), in which the majority concluded that the question of whether HGN test results are admissible in a prosecution for driving under the influence would not be reached because the State failed to preserve the issue for review on appeal. Nevertheless, three justices went on to state that HGN tests "are no longer 'novel' in any meaningful sense," and, as a result, "the State should not be put to the burden of having to reestablish the test's validity in every case." *Basler*, 193 Ill. 2d at 551. The plurality also noted that:

> "Although the State is no longer required to show that the HGN test satisfies the *Frye* standard before it may introduce the results of an HGN test into evidence, the validity of HGN tests and test results is not beyond challenge. If a defendant has evidence showing that HGN tests are scientifically unsound, then he may interpose the appropriate objection to the HGN test results and present his supporting evidence to the trial court. If the trial court is persuaded by the defendant's evidence, then the court has the right to bar its admission. Note, however, that it is the defendant's obligation to show that the test results are infirm. It is not the responsibility of the State to show that the tests and results are scientifically valid. Absent proof by the defense that the HGN test is unsound, the State need only show that the officer who gave the test was trained in the procedure and that the test was properly administered." *Basler*, 193 Ill. 2d at 551-52.

Two justices specially concurred, stating that in light of the dismissal for failure to raise the HGN issue in the trial court, "the plurality's additional discussion concerning the admissibility of HGN test results is entirely *dicta* without precedential value." *Basler*, 193 Ill. 2d at 552 (Heiple, J., specially concurring, joined by Bilandic, J.).

The two remaining justices dissented, noting that even after joining the majority's forfeiture analysis, the plurality nevertheless reached the merits of the issue. *Basler*, 193 Ill. 2d at 557 (McMorrow, J., dissenting, joined by Freeman, J.). They concluded by emphasizing that "the issue of whether HGN testing meets the *Frye* standard has not been resolved" by this court. *Basler*, 193 Ill. 2d at 559-60 (McMorrow, J., dissenting, joined by Freeman, J.).

-3-

Defendant's memorandum in support of the motion *in limine* argued that the HGN test is "scientific in nature" and, thus, the State has the burden of establishing its general acceptance in the scientific community. Defendant argued further that in light of *Basler*, there is no controlling decision by the state's highest court on this question and, further, that the appellate districts are split on the question of admissibility of HGN test results. In addition, defendant noted that this case arose in Cook County and that the First District of the Appellate Court has not yet addressed this issue. Therefore, defendant concluded, he was entitled to a *Frye* hearing on this question at which the State would have the burden of establishing that the HGN test is generally accepted in the relevant scientific community. The remainder of the memorandum cited various authorities for the proposition that the HGN test is unreliable for the purpose of determining whether a driver is under the influence of alcohol.

A hearing was held on this and another motion on February 21, 2002. In his motion *in limine* to exclude the results of the Breathalyzer test, defendant argued that the machine used to test his breath had a history of malfunction and that the results it produced were so unreliable that they should not have been admitted at trial. On appeal, he argued that even if the Breathalyzer results were properly admitted, the trial court erred by denying him the ability to present evidence of the machine malfunctions to the jury. At no time did he argue to the trial court or to the appellate court that the results of the HGN test were in any way related to the officer's request that he submit to a Breathalyzer test.

As to the second motion under consideration at the February 21, 2002, hearing, the transcript reveals confusion regarding the nature of defendant's motion. The court expressed concern with "whose time it is," for speedy-trial purposes. Defense counsel responded that in the *Frye* hearing, the burden would be on the State. The court, however, stated that "[i]t's the burden of the person making the motion to proceed forward." Thus, the court stated, any delay due to a hearing on the motion *in limine* would be attributed to the defendant. Defense counsel explained that he "would rest on his motion" regarding the request for a *Frye* hearing and noted that he was not "setting up an evidentiary hearing where I would have the

burden." The following exchange then took place between the court and defense counsel:

> "THE COURT: This is akin, a motion *in limine* is akin to a motion to suppress, except for the fact that on the motion to suppress you're going on Constitutional grounds, on the motion *in limine* you're going on evidentiary grounds.
>
> It's still, the burden is yours to present evidence to sustain your particular position.
>
> COUNSEL: My concern, Judge, is the actual *Frye* hearing, itself, is not our burden.
>
> THE COURT: Well, I'll tell you what.
>
> If you read the Supreme Court case on that issue, it seems to suggest that you have to make some sort of indication to the Court that there is an issue regarding *Frye* and, in fact, I should bring the case out because I looked at the words last night, I took the case last night and, you know, and then it goes to the State.
>
> But I mean, you still have the responsibility to make the issue.
>
> COUNSEL: My understanding is that the burden is shifted to the State once I object and request a *Frye* hearing, and that's what I've done, through a memorandum of law and through a written motion given with two months notice to the State."

The trial court cut off further discussion on the basis that "we're getting beyond where we're at" by "getting into the *Frye* issue right now." The court announced that "this delay is attributable to the defendant." Counsel again stated that the motion and supporting memorandum made a sufficient showing of entitlement to a *Frye* hearing.

The court then conflated the two pending defense motions by stating that "You dealt with the issue of the [B]reathalyzer at first because, obviously, that may negate this *Frye* hearing or this *Frye* issue in total." Moments later, the court asked counsel "Do you want to withdraw the motion at this particular point in time for *Frye*?" and counsel agreed to withdraw the motion without prejudice.

The State commented that the refiling of the "*Frye* hearing motion *in limine*" would have to be done in sufficient time that it could be resolved prior to trial. The hearing ended with the setting of a trial date. The record provided to this court does not contain a subsequent written motion seeking a *Frye* hearing with regard to the HGN test.

On April 4, 2002, the trial began. Prior to selection of the jury, the trial court heard additional argument on the defense motion to exclude the results of the Breathalyzer test based on evidence that the particular machine used in this case had a history of malfunctions and was eventually taken out of service. The motion was denied.

The trial court then asked, "How about the second motion on the Horizontal Gaze Nystagmus Test?" Defense counsel responded, "We'll waive it."

On April 5, 2002, after *voir dire* concluded but before opening statements, the trial court considered several pretrial motions. At this time, defendant moved to bar the State's witnesses from characterizing the results of the field sobriety tests as "passing or failing." Counsel argued that the State's witnesses should be allowed to testify to "what happened," but that any characterization of defendant's actions as passing or failing would be "unscientific." Counsel stated that if the State wants to characterize a test result as passing or failing, it must first demonstrate that either the *Daubert* (*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993)) or the *Frye* test is met. The motion was denied.

Defense counsel then requested a *Frye* hearing "during the trial" with regard to "the officer's ability to perform and characterize the result of the HGN test." The trial court indicated that *Basler* "controls the case" and denied the motion.

After the jury returned with verdicts of guilty on both counts, defendant filed a posttrial motion for a directed verdict of not guilty and for a new trial. In this motion, defendant asserted that "[t]he Court erred in denying Defendant's motion requesting a *Frye* hearing with regards to the scientific validity of the Horizontal Gaze Nystagmus Test."

A hearing was held on the posttrial motion on September 17, 2002. Defense counsel stated, "We asked for a *Frye* hearing on [the

HGN test], we did not receive a *Frye* hearing. The motion *in limine* was denied." The State acknowledged that there is "a split in the circuits on this issue of whether or not a *Frye* hearing is required prior to introducing this substantive evidence in a DUI trial" and that, in *Basler*, this court did not resolve the issue. Nevertheless, the State argued that in light of the *Basler dicta*, this "is not the sort of thing that is subject to a *Frye* hearing any more." Defense counsel then offered argument that the HGN test is unreliable and that such test results should not have been admitted at trial. The trial court denied the posttrial motion and an appeal followed.

The appellate court concluded that the results of the HGN test were properly admitted absent a *Frye* hearing (349 Ill. App. 3d at 632), without mentioning that: (1) defendant's motion for a *Frye* hearing was withdrawn and apparently never refiled, (2) when given the opportunity to argue the point on the first day of trial, the defendant "waived" the issue, and (3) when the trial court did finally make a ruling, it was only in response to a defense argument that the officer lacked the ability to perform and characterize the result of the HGN.

In his petition for leave to appeal, defendant asserted that review of his case by this court would resolve the question left open in *Basler* and resolve a conflict among the appellate districts as to whether a defendant is entitled to a *Frye* hearing to determine whether HGN test results are admissible as evidence of his driving under the influence. We granted leave to appeal to answer this question.

However, in his brief to this court, defendant does not address this question at all. Instead, he argues that: (1) HGN evidence does not meet the *Frye* standard, (2) this court should abandon *Frye* and adopt the *Daubert* standard in its place, and (3) the HGN evidence was not properly admitted in this case because the State did not prove that the officer properly administered the test. None of these three arguments were raised in defendant's petition for leave to appeal. In fact, none of these arguments were among the 41 separate assertions of error contained in defendant's posttrial motion.

## ANALYSIS

The third issue raised in defendant's brief was not raised in his posttrial motion, his appeal before the appellate court, or his petition for leave to appeal to this court. It is, therefore, forfeited. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

The first and second issues are deserving of this court's attention. Unfortunately, they are raised for the first time in defendant's brief to this court and they, too, are forfeited. Although we note that the rule of forfeiture is "an admonition to the parties and not a limitation on the jurisdiction of this court" (*People v. Normand*, 215 Ill. 2d 539, 544 (2005)), we decline to address these issues on the merits for several reasons.

First, the procedural history described above is, at best, convoluted. It is unclear what issue was actually being argued to the trial court and what question the trial court thought it was answering. Under this circumstance, we would not be engaging in review, but rather writing on a clean slate. This is not our proper role.

Second, defendant has failed to argue the threshold question–whether he should have been given a *Frye* hearing–to this court. If he had argued this question and if this court had answered it in the affirmative, we might have then been persuaded to reach the next question–whether HGN testing meets the *Frye* standard–even though this question was not reached by the trial court. However, because we do not cross the threshold, it would be inappropriate for us to go further.

Finally, defendant was convicted of two counts. He has made no argument that the results of the HGN test led to his being asked to take a Breathalyzer test and the resulting conviction of driving with a blood-alcohol content of 0.08 or more (625 ILCS 5/11–501(a)(1) (West 2002)). Thus, even if we were to conclude that the results of the HGN test should not have been admitted, this error would have affected only his conviction for DUI (625 ILCS 5/11–501(a)(2) (West (2002)). As a result, his conviction and sentence would still stand.

## CONCLUSION

Based on the record before us and defendant's failure to argue the issue upon which we granted leave to appeal, we dismiss this appeal.

The important questions that defendant unsuccessfully attempts to raise are best left for another day. This cause is remanded to the trial court for further proceedings in accordance with the judgment of the appellate court.

*Dismissed.*

JUSTICE FREEMAN, dissenting:

I strongly disagree with the court's resolution of this appeal. My colleagues dismiss the appeal because defendant failed "to argue the issue upon which we granted leave to appeal." Slip op. at 8. In so doing, this court does a great disservice to both bench and bar by leaving unresolved the question that has split our appellate court since the filing of our decision in *People v. Basler*, 193 Ill. 2d 545 (2000). Accordingly, I dissent.

A jury convicted defendant of driving with a blood-alcohol concentration of 0.08 or more (625 ILCS 5/11–501(a)(1) (West 2002)) and of driving under the influence of alcohol (625 ILCS 5/11–501(a)(2) (West 2002)). Prior to the trial, defendant filed a motion *in limine* to exclude the results of the horizontal gaze nystagmus (HGN) test that had been administered to him by the arresting officer. In the motion, defendant argued that HGN tests have not been generally accepted in the scientific field and that, absent a foundation laid by the State that the HGN test comported with the requirements of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), the results should be barred. Although defendant at one point "waived" this motion, defendant, during trial, once again requested a *Frye* hearing. The circuit court substantively denied the renewed motion, ruling that this court's decision in *People v. Basler*, 193 Ill. 2d 545 (2000), controlled the issue.

On appeal, the appellate court held, *inter alia*, that the trial judge properly denied defendant's motion to bar the results of the HGN test absent a *Frye* hearing. 349 Ill. App. 3d 622. In so holding, the court stated that the HGN test is generally accepted in the scientific community and thereby no longer necessitates a *Frye* hearing prior to admission into evidence. 349 Ill. App. 3d at 631.

Defendant subsequently filed a petition for leave to appeal (PLA) in this court, in which he sought this court's clarification of whether a trial court must first hold a *Frye* hearing before allowing the admission of HGN test results into evidence. Defendant stated in his PLA that "the instant case presents an opportunity for this Court to squarely resolve the question of whether the HGN test meets the *Frye* standard, a question that was left open in *Basler*."

In its opinion, the court states that the question we granted leave to appeal to answer in this case was "whether HGN test results are admissible as evidence of his driving under the influence." Slip op. at 7. The court believes that defendant does not address this question "at all" (slip op. at 7) and "has failed to argue the threshold question–whether he should have been given a *Frye* hearing." Slip op. at 8. In my view, the court is mistaken in so holding. While I acknowledge that defendant's brief is inartfully constructed and does not always clearly draw the connection between his argument that HGN evidence does not meet the *Frye* standard and his claim that he should have been granted a *Frye* hearing, if this court were to dismiss every appeal in which parties' arguments were inartfully presented, we would have to dismiss many appeals. See *People v. Jung*, 192 Ill. 2d 1, 13 (2000) (Freeman, J., specially concurring, joined by Miller and McMorrow, JJ.) (acknowledging that this court has responded to inartful briefing in many cases). In contrast to my colleagues in the majority, I believe defendant's briefing adequately provides enough in the way of analysis for this court to address the question "we granted leave to appeal to answer in this case."

In his opening brief, defendant identifies the first issue with the following heading: "Scientists have not accepted the Horizontal Gaze Nystagmus (HGN) field sobriety test as a valid scientific technique and thus HGN evidence is not admissible under the *Frye* standard." While this heading or statement of the issue is overly broad, I note that in the body of the argument which follows it, defendant states that because Illinois reviewing courts have *never* affirmed the use of the HGN field test in a DUI prosecution after a fully litigated *Frye* hearing, "a hearing should have been held in this case and it was improper for the courts below to take judicial notice of general acceptance through the 1996 decision of the Arizona court." This, of course, is the "threshold question" raised in defendant's PLA.

Elsewhere in this same argument, defendant argues that "HGN evidence is subject to the *Frye* test" and that because "Illinois law provides no conclusive answer on the admissibility of HGN, it must be novel and subject to the *Fyre* standard."

In light of the above, defendant *did* indeed raise the "threshold question" in his brief. Under *Frye*, which is followed in Illinois, the evidence in question must be generally accepted in the relevant scientific community before it can be admitted. See *People v. Miller*, 173 Ill. 2d 167 (1996). This case presents the question of whether it is necessary to conduct a hearing pursuant to *Frye* prior to the admission of the result of a HGN test in a criminal trial for DUI. Defendant's brief suggests that such evidence is not generally accepted in the relevant scientific community while the State posits that not only does the relevant scientific community find such evidence generally acceptable, a trial court need not hold an evidentiary hearing to so conclude but rather can take judicial notice of the fact. Thrown in for good measure is a basic disagreement between the parties over the question of whether the necessity of a *Frye* hearing turns on the novelty of the scientific evidence in question. Simply stated, there is nothing about defendant's brief that prevents this court's resolution of these questions.[1]

I am also troubled by another aspect of today's decision. The court's opinion spends a great deal of time reciting the procedural history of the case, including what was contained in defendant's

---

[1]Even if I could agree that defendant did not address the "threshold question" in his brief, I could not agree with the court's resolution of the appeal. I note that our appellate rules allow for a PLA to stand as an opening brief. See 177 Ill. 2d R. 315(g). Although defendant did not comply with this rule, this court could, in lieu of dismissal in light of the split of opinion in our appellate court, strike defendant's brief and rely solely on his PLA and the arguments contained in it. This approach would have been workable here given that the State's brief contains an argument addressed to the "threshold question" raised in the petition. In my view, such an approach would strike a more appropriate balance in dealing with what is perceived by the court as defendant's briefing deficiencies because it would allow the highest court of this state to do what it is supposed to do in cases taken on its discretionary appeal docket, *i.e.*, provide guidance to the lower courts by resolving a conflict caused by one of our opinions.

initial motion *in limine* (slip op. at 2-4) and what was said by counsel in response to questions posed by the court (slip op. at 5-6). In fact, in its "Background" section, the court states, "[f]or purposes of the present appeal, only the procedural history of the case is relevant." Slip op. at 2. Given that the court is dismissing the appeal due to defendant's "failure to argue the issue upon which we granted leave to appeal" (slip op. at 8), its opinion should amount to nothing more than an order of dismissal, and the "procedural history of the case" is wholly irrelevant. This leads me to wonder whether my colleagues in the majority are suggesting that defendant did not properly preserve his objection to the admission of the HGN test evidence. If so, I disagree.

As I noted previously, defendant moved *in limine* to bar the admission of the HGN evidence. At the hearing on the motion, the circuit court was concerned not with the substance of the motion but, rather, whether the ensuing delay that holding such a hearing would cause would be attributable to defendant. Defense counsel later told the court that he would "waive" the HGN-test motion. Notwithstanding this "waiver" of the motion, the trial court allowed defendant to again request a *Frye* hearing during trial. Citing to *Basler*, the circuit court denied the motion in a substantive ruling. Defendant later raised the failure of the circuit court to conduct a *Frye* hearing as a basis for granting him a new trial in his posttrial motion. The circuit court held a hearing on the motion, at which the parties provided extensive argument on this issue.

In order to properly preserve an issue for appellate review, a defendant must both make a contemporaneous objection and raise the matter in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176 (1988). Despite his initial "waiver" of the motion, defendant apparently renewed the motion at trial, and the trial judge entertained it on its merits. This satisfies the contemporaneous-objection requirement needed for preserving an issue for review. The matter was also raised in the posttrial motion, thereby satisfying the posttrial motion component of the rule. Thus, any implicit suggestion that, because this matter was not properly preserved, the court need not resort to its supervisory authority in response to defendant's "failure to address the issue upon which we granted leave to appeal" misses the mark completely. Along these same lines, I believe that if the appeal is

being dismissed solely on the ground that defendant failed "to address the issue upon which we granted leave to appeal," the court should withhold making statements concerning (i) how any error in the admission of the evidence would or would not have affected his conviction and (ii) whether his conviction and sentence would "still stand." Slip op. at 8. Given the purely technical grounds identified by the court as the reason for the appeal's dismissal, it is irrelevant what this court thinks about the substance of defendant's convictions, which stand by virtue of the appellate court's affirmance. Any written opinion in this case should be limited only to the fact that the appeal is being dismissed due to "defendant's failure to argue the issue upon which we granted leave to appeal."

In light of the forgoing, I cannot agree with the court's disposition of this appeal, which serves only to prolong unnecessarily the debate currently raging in the appellate court with respect to our opinion in *Basler*. Having read defendant's PLA, his opening brief, the State's brief, and defendant's reply brief, I believe this court can answer the question raised in this appeal. I strongly disagree with court's refusal to do so.

JUSTICE McMORROW joins in this dissent.

### Dissent Upon Denial of Rehearing

JUSTICE FREEMAN, dissenting:

I continue to believe that the court wrongly dismissed this appeal and thus continue to voice my strongest disapproval of the court's actions upon denial of rehearing.

Defendant's petition for rehearing contains two main arguments. In the first section, defendant's attorney maintains that the brief she filed did, indeed, contain the issue upon which this court granted the petition for leave to appeal. In the second section of the petition, defendant's attorney states the following:

> "Based on this Court's decision to dismiss Andre Robinson's appeal from his criminal conviction due to counsel's inadequate briefing, appellate counsel seeks leave to withdraw due to her deficient representation, and requests

-13-

> appointment of new counsel to properly brief the issues that the Court defines."

In essence, defendant's attorney is confessing to having rendered defendant ineffective assistance of counsel. It is unclear to me why this portion of the defendant's petition for rehearing has not generated any type of response from my colleagues in the majority. Do they not agree that an appointed attorney provides ineffective assistance of counsel when her purported failure to properly argue the issue upon which an indigent defendant was granted leave to appeal results in the dismissal of that appeal? The court's silence, in the face of its initial condemnation of counsel's actions in this case, is difficult to explain.

Turning to the first section of defendant's petition for rehearing, I agree that the defendant's brief did in fact contain argument on the question upon which this court granted leave to appeal. In Illinois, the exclusive test for the admission of expert testimony is governed by the standard first expressed in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63 (2002). Under *Frye*, scientific evidence is admissible at trial only if the methodology or scientific principle upon which the opinion is based is "sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye*, 293 F. at 1014. A trial judge will apply the *Frye* test only if the scientific principle, technique, or test offered by the expert to support his or her conclusion is "new or novel." *Donaldson*, 199 Ill. 2d at 79, citing *People v. Basler*, 193 Ill. 2d 545, 550-51 (2000). "Only novelty requires that the trial court conduct a *Frye* evidentiary hearing to consider general acceptance." *Donaldson*, 199 Ill. 2d at 79. Once such a principle, technique or test has gained general acceptance in the particular scientific community, its general acceptance is presumed in subsequent litigation. *Donaldson*, 199 Ill. 2d at 79. For this reason, DNA analysis does not require a *Frye* hearing because the principles have been found to be generally accepted. See *Donaldson*, 199 Ill. 2d at 79.

Applying the above principles to this case, it is difficult to comprehend the court's continued insistence that the argument raised in defendant's brief was forfeited because it was not the issue upon which this court granted leave to appeal. Defendant, in his brief,

argued that HGN evidence does not meet the *Frye* standard. In his petition for leave to appeal, defendant identified the issue for review as being whether a defendant is entitled to a *Frye* hearing to determine whether HGN test results are admissible as evidence of driving under the influence. Importantly, our case law dictates that if a scientific technique or test, in this case the HGN test, is viewed as generally accepted, then no *Frye* hearing need be held. But if the test is novel or new, then a *Frye* hearing must be held so that the fact finder can rule on whether it is generally accepted and thus admissible. In his brief, defendant argued that a *Frye* hearing should have been held because our opinion in *Basler* did not resolve the question of the HGN test's general acceptance. Specifically, the brief states:

> "Because Illinois reviewing courts have *never* affirmed the use of the HGN field test in a DUI prosecution after a fully-litigated *Frye* hearing, a hearing should have been held in this case and it was improper for the courts below to take judicial notice of general acceptance through the 1986 decision of an Arizona court." (Emphasis in original.)

In the petition for rehearing, defendant's attorney identifies substantive sections from the brief where she explained (i) why the lower courts' had incorrectly held that HGN testing was generally accepted in light of *Basler* and (ii) why the circuit court's failure to hold a *Frye* hearing was incorrect. As she did in her reply brief to the State's assertions of forfeiture, defendant's attorney, in the petition for rehearing, points to this court's decision in *In re Commitment of Simons*, 213 Ill. 2d 523 (2004), in which this court ruled, for the first time, that *de novo* review of *Fyre* decisions was appropriate as being the reason why she organized the brief in the manner in which she did. Notably, the court continues to ignore this argument today just as it did when it filed its original opinion.

Defendant's brief, not surprisingly, took the view that a *Frye* hearing should have been held in this case. It also took the view that failure to hold the hearing could not be harmless because HGN evidence does not meet the *Frye* standard and any admission of such evidence was prejudicial. I do not understand how five members of this court can hold that these arguments are different from the issue raised in the petition for leave to appeal. As I see it, the court either

lacks a basic understanding of the substance of the *Frye* claim that is at issue in this appeal or has, for some reason, read defendant's brief in an overly narrow and rigid manner. Given my utmost respect for my colleagues' legal intellect, I can only conclude that the latter reason is the true cause for this result, and the court should grant rehearing in order to rectify this.

Moreover, even if the court were justified in its criticism of defendant's brief as having violated the appellate rules of briefing, I continue to believe that its imposition of the harshest sanction available, dismissal, is wholly unwarranted. As I noted in my original dissent in this case, the court could have stricken the brief and restricted defendant to the single argument the court alleges was advanced in his petition for leave to appeal. In that way, the court could have made its point *and*, at the same time, still addressed an issue of law that has wrought confusion in the lower courts. Indeed, in the petition for rehearing, counsel formally asks this court to do just that if it denies her motion to withdraw based on having rendered ineffective assistance of counsel. The court ignores this motion just as it ignored me when I raised the same solution in my original dissent. To this day, the court has remained unwilling or unable to explain why it could not produce an opinion in this case which resolved "the issue upon which we granted leave to appeal." Slip op. at 8.

It is not enough that the court is wrong in its conclusions regarding the adequacy of defendant's brief and its choice of sanction for that purported inadequacy. Its decision to dismiss the appeal has several implications that reach beyond this case, which I address in turn. First, since this court issued its fractured decision in *People v. Basler*, 193 Ill. 2d 545 (2000), both our trial courts and appellate court have struggled with the admission of HGN evidence in DUI cases. Unfortunately, DUI litigation is not an obscure, rarely practiced field of law in this state. In 2005 alone, our circuit courts across the state disposed of 62,560 DUI cases. 2005 Annual Report of the Illinois Courts, Statistical Summary, at 43. One would like to believe that the heavy volume of these cases in our court system would prompt the court to fashion the sanction imposed in this case in such a way so as to allow the court to address the important legal issue this case presents, particularly because the legal community

"rel[ies] on our opinions to map the evolving course of the law." *People v. Jung*, 192 Ill. 2d 1, 17 (2000) (McMorrow, J., specially concurring, joined by Miller and Freeman, JJ.). As I pointed out in my original dissent, this court's *raison d'etre* is to provide guidance to the lower courts by resolving conflicts created by one of its own opinions. As it stands, both bench and bar must now wait until another day for the needed clarification in this important area of the law simply because of the court's unjustified belief that defendant's brief failed to argue the issue upon which we granted leave to appeal.

Second, the court's action displays a profound insensitivity to the effect its holding has on the people involved in this case. Defendant has, of course, lost the opportunity to be heard in this court that he won when we granted him leave to appeal. Overlooked, however, is the fact that this court has maligned defendant's appellate attorney wrongly. I continue to maintain that defendant's brief did not suffer from the fatal flaws identified by the court in its opinion. As noted at the outset of this dissent, defendant's attorney seeks leave to withdraw if the court continues to view her brief in the same manner. If the brief was truly as bad as the court has held it to have been, why not allow appointed counsel to withdraw? Perhaps the reason for the court's silence is that the brief was not the flawed document that it was painted to be in its opinion, and my colleagues do not want this attorney to have the stain on her professional record that confessing to providing ineffective assistance of counsel would bring. Such benevolence, of course, overlooks the fact that, as it stands right now, defendant's attorney will have to bear the undeserved consequences that the court's opinion will have on her career going forward. There can be no question that the court's opinion spoke negatively of her work product. How the court's unjust characterization has affected the attorney's standing with her superiors is unknown. But, if this attorney has aspirations for a judicial career, this case exists in the public domain. She would be vulnerable to criticism as a result of it. I can only wonder how my colleagues would react if their professional reputations were sullied in such fashion.

Finally, the court's treatment of this case should give pause to all attorneys who practice before us. By its actions, the court has provided our legal community with an unflattering look into its decisionmaking process. This is not a court to which the strictures of

our own rules or the doctrine of procedural default are scrupulously honored. Were it so, today's decision might be more understandable. But that is not the case. This court routinely addresses arguments in the face of procedural irregularities, which would otherwise render the claims defaulted. See *People v. McCarty*, Nos. 100469, 100813 cons., slip op. at 22-23 (October 19, 2006) (reaching search warrant specificity argument despite the fact that the issue was *not contained* in the petition for leave to appeal); *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417 (2005) (allowing petition for leave to appeal to stand despite of failure to comply with Supreme Court Rule 315). Such an inconsistent application of appellate rules and the doctrine of procedural default does not inspire confidence in this court. Rather, it has the opposite effect. As our Chief Justice recently noted in his address to the 2006 Illinois Judicial Conference, "if our judgments are suspect or inconsistent, we have nothing else to fall back on and our influence will diminish." J. Rooney, *Thomas Wants Judiciary to Earn Respect*, Chicago Daily Law Bulletin, October 19, 2006. This opinion serves as yet another window to the arbitrary nature of this court's jurisprudence in this area and reveals that our inconsistency can have dire effects on both litigants and practitioners. Stated bluntly, there is no rhyme or reason to the court's actions from case to case as rules are relaxed for some and strictly adhered to for others. I submit that this is not how a reviewing court should operate.

In light of the above, I continue to strongly disagree with the actions taken by the court in this case and would grant rehearing.