Docket No. 99581.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* ROLANDIS G., a Minor (The People of the State of Illinois, Appellant, v. Rolandis G., Appellee).

*Opinion filed November 20, 2008.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Garman, and Karmeier concurred in the judgment and opinion.

Justice Thomas specially concurred, with opinion.

Justice Kilbride also specially concurred, with opinion.

## OPINION

Eleven-year-old Rolandis G. (respondent) was adjudicated delinquent after a juvenile court judge, in the circuit court of Winnebago County, found him guilty of the aggravated criminal sexual assault (720 ILCS 5/12–14(b)(i) (West 2002)) of six-year-old Von J. The appellate court reversed the adjudication and remanded for a new trial, ruling that the hearsay testimony of two witnesses had been improperly admitted under *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). 352 Ill. App. 3d 776. The appellate court also held that the statute which permitted the hearsay testimony to be admitted into evidence, *i.e.*, section 115–10

of the Code of Criminal Procedure of 1963 (725 ILCS 5/115–10 (West 2002)), was unconstitutional "to the extent [it] permits the introduction of [testimonial] statements" in violation of the confrontation clause of the United States Constitution (U.S. Const., amend. VI). 352 Ill. App. 3d at 781.

The State petitioned this court for leave to appeal, which we granted. In this appeal we are asked to resolve a number of issues, some of which were left open by our recent decision in *People v. Stechly*, 225 Ill. 2d 246 (2007).

## BACKGROUND

On July 16, 2002, Rolandis G. was arrested and charged with the aggravated criminal sexual assault of Von J. The following day, a delinquency petition was filed wherein it was alleged that on June 25, 2002, Rolandis had forced Von to perform fellatio on him. The petition asked that Rolandis be declared a delinquent minor and made a ward of the court.

On November 21, 2002, a trial was held on the delinquency petition. Prior to trial, the State filed motions *in limine* pursuant to section 115–10 (725 ILCS 5/115–10 (West 2002)),[1] seeking to admit

_____

[1] Section 115–10 provides, in pertinent part:

"(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

(2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

into evidence hearsay statements Von made to his mother and to Officer Cure of the Rockford police department, as well as a videotaped statement made to Jacqueline Weber, a child advocate at Rockford's Carrie Lynn Children's Center. The court deferred ruling on these motions until after hearing all of the testimony.

The matter proceeded to trial and Von was called as the first witness. Von answered a few preliminary questions about himself and made an in-court identification of Rolandis, stating that Rolandis was someone he had known from the neighborhood. However, when asked about events that occurred on June 25, 2002, Von resolutely refused to respond. Even after he was given a short recess to speak to his mother and a child advocate, Von could not bring himself to answer questions about the allegations concerning Rolandis. The court offered defense counsel the opportunity to cross-examine Von, but she declined to do so.

The State then called Von's mother, Jacqueline M., to the stand. She testified that around 11 a.m. on June 25, 2002, her six-year-old son, Von, went outside to play with the neighborhood children. She said Von returned home shortly after noon, accompanied by Rolandis. Upon entering the home, Von immediately went to the bathroom, while Rolandis remained by the front door of the apartment. She heard Rolandis call to Von and ask him to come back outside, but Von refused and Rolandis left.

---

(2) The child *** either:
    (A) testifies at the proceeding; or
    (B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement[.]
***

              * * *

(e) Statements described in paragraphs (1) and (2) of subsection (a) shall not be excluded on the basis that they were obtained as a result of interviews conducted pursuant to a protocol adopted by a Child Advocacy Advisory Board as set forth in subsections (c), (d), and (e) of Section 3 of the Children's Advocacy Center Act [55 ILCS 80/3] or that an interviewer or witness to the interview was or is an employee, agent, or investigator of a State's Attorney's office." 725 ILCS 5/115–10 (West 2002).

Jacqueline testified that while Von was in the bathroom she saw him coughing, spitting, and rinsing his mouth out with water. She asked Von if something was wrong and Von told her that his "throat was hot." Von remained inside the apartment and, after a few minutes, returned to the bathroom and started coughing and spitting again. Shortly thereafter, Von came into the living room, where Jacqueline was sitting, and told her, "Rolandis made me suck his dick." Jacqueline said she questioned Von and he told her that while he had been outside that morning Rolandis had forced him into a nearby wooded area and threatened him with a stick if he did not do what Rolandis wanted. Von told her Rolandis called him names and made him cry. Also, Von said that, after he did what Rolandis told him to do, Rolandis made Von "pinky swear" not to tell anyone. Jacqueline testified that, because of the "pinky swear," Von did not want her to tell anyone else what Rolandis had done. Nevertheless, Jacqueline called the Rockford police department to report what had happened and within 10 minutes Officer Robert Cure came to Jacqueline's apartment to speak to her and Von.

Officer Cure was the next witness to testify. He told the court that, on June 25, 2002, he responded to Jacqueline's call to the Rockford police department and spoke with Jacqueline and Von at their apartment. Officer Cure testified that Von told him that Rolandis had forced Von to "suck his dick" and that Rolandis had been holding a stick in his hand when he forced Von to perform this act. Von also told Officer Cure that he had choked while he was performing the act and that a fluid had come out of Rolandis' penis. Von told Officer Cure that, after this happened, he came home and began to wash his mouth out with water.

The State's last witness was Detective Paul Swanberg from the Rockford police department. He testified that, on July 1, 2002, he went to the Carrie Lynn Children's Center in Rockford, a facility which provides services to child victims of sexual and severe physical abuse. Von J., accompanied by his mother, came to the Center that day to be interviewed by child advocate Jackie Weber. Because Weber was unavailable to testify at trial, Detective Swanberg, who had observed the interview, testified regarding Weber's interview with Von.

Detective Swanberg testified that Von's interview took place in a room that was equipped with a one-way mirror and a hidden audio/videotaping device. In accord with Center protocol, Weber's interview with Von was videotaped. Von and Weber were the only people in the room when the interview was conducted. However, Detective Swanberg and another staff person from the Carrie Lynn Children's Center observed the interview via the one-way mirror.

Detective Swanberg testified that Weber asked Von to identify various parts of a boy's body using two anatomical drawings (front and back). Weber then wrote down Von's responses on the drawings. At trial, Detective Swanberg identified the two drawings Weber had marked and they were placed into evidence.

Detective Swanberg also testified that when Weber completed her interview with Von he took a copy of the videotaped interview into custody. The videotape was placed into an evidence bag and kept at the police department. At trial, Detective Swanberg identified the evidence bag and the videotape. Subsequently, the videotape was played in its entirety for the court. On the videotape, Von told Weber about the incident with Rolandis, repeating what he had told his mother and Officer Cure, adding some additional details in response to Weber's questioning.

After presenting its evidence, the State asked for a ruling on its motions *in limine*. The court heard the arguments of counsel and then ruled, in accord with section 115–10(b)(1), that the time, content, and circumstances under which Von's statements were made to his mother, to Officer Cure, and to Jackie Weber provided sufficient indicia of reliability. The court further ruled that, even though Von had been unable to answer questions at trial regarding Rolandis' conduct, Von had "testified" within the meaning of section 115–10(b)(2)(A). Accordingly, the court held that the testimony of Von's mother and Officer Cure regarding Von's out-of-court statements, as well as Von's videotaped interview with Jackie Weber, were admissible as exceptions to the hearsay rule. The State then rested.

Defense counsel called Rolandis to testify on his own behalf. Rolandis admitted that he had been playing with Von on June 25, 2002, and that he had walked Von home through a wooded area near his home. He denied, however, that he had forced Von to perform any

sexual acts and could offer no explanation as to why Von would make up such a story. Defense counsel also called as witnesses Rolandis' mother, Rolandis' friend Jessie, and another friend's mom, Jessica. These witnesses provided no material evidence with respect to the charged offense. Although Jessie had been with Von and Rolandis on June 25, 2002, Jesse testified that he left before Rolandis walked Von home. Defense counsel attempted to ask the other witnesses questions about Rolandis' general character, but the State objected to the line of questioning and the evidence was ruled inadmissible.

After hearing counsel's arguments, the trial court held it was "convinced beyond a reasonable doubt" that Rolandis was guilty of committing aggravated criminal sexual assault. The court adjudicated Rolandis delinquent, made him a ward of the court, and sentenced him to probation for a period of five years.

Rolandis appealed his adjudication. He initially argued, based on section 115–10, that (1) the trial court erred in ruling that Von was an available witness and (2) the State failed to meet its burden of producing evidence to corroborate Von's out-of court statements, pursuant to section 115–10(b)(2)(B), which it was required to do because Von was unavailable to testify.

While Rolandis' appeal was pending, the United States Supreme Court filed its decision in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). Rolandis then filed a supplemental brief, claiming that Von's statements to Officer Cure and Jackie Weber were testimonial hearsay and, thus, improperly admitted under *Crawford*. Rolandis also asked that the appellate court declare section 115–10 constitutionally invalid to the extent that it permits the introduction of testimonial out-of-court statements when the accused has had no prior opportunity to cross-examine the declarant, in violation of the confrontation clause of the United States Constitution (U.S. Const., amend. VI).

On appeal, the State conceded that Von was not available to testify at trial. As to the remaining issues, the appellate court held that Von's statements to Officer Cure and Jackie Weber were "testimonial" and inadmissible under *Crawford* because Von did not testify at trial and respondent had no prior opportunity to cross-examine him. The court also held that, to the extent that section

115–10 permits statements such as these to be admitted into evidence, the statute is unconstitutional.

The appellate court further found that Von's statement to his mother was nontestimonial and sufficiently corroborated. Thus, the appellate court ruled that Von's out-of-court statement to his mother was properly admitted under section 115–10 and *Crawford.* In addition, the court held that, for purposes of double jeopardy, the testimony of Von's mother was sufficient to support a finding of guilt. Accordingly, the appellate court reversed Rolandis' adjudication, but remanded the cause for a new trial. 352 Ill. App. 3d 776.

The State sought leave to appeal pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315), arguing that review by this court was crucial to affirm the constitutionality of section 115–10 and to consider the proper application of *Crawford* in situations involving young victims of sexual crimes. We granted the State's petition. We also granted the National District Attorneys Association/American Prosecutors Research Institute to file an *amicus* brief.

ANALYSIS

There are three main issues raised by the State in this appeal. First, the State asks that we find the appellate court erred when it ruled on respondent's confrontation clause claim and held that the videotaped statement Von gave to child advocate Jackie Weber was "testimonial" under *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). The State asks that we reverse this ruling and find that admission of the videotaped statement did not violate respondent's right of confrontation. The State maintains that whether a statement is "testimonial" is a question of law and our review, therefore, is *de novo.* See *People v. Hall*, 198 Ill. 2d 173, 177 (2001) (review of legal questions is *de novo*).

The State's remaining issues are presented as alternative claims and are raised for the first time before this court. The State contends that if we affirm the appellate court's finding that Von's videotaped statement to Weber is "testimonial" we must consider: (1) whether admission of Von's hearsay statements to Weber and Officer Cure was harmless error, and (2) whether, pursuant to the doctrine of

forfeiture by wrongdoing, respondent should be precluded from raising a confrontation clause claim. The State concedes that neither of these issues was raised in the court below or in its petition to this court for leave to appeal, but asks that we excuse any forfeiture of these issues to promote a just result and to maintain a sound and uniform body of precedent.

## I. Confrontation Clause
### A. *Crawford*, *Davis*, and *Stechly*

In November 2002, when respondent's adjudication trial took place, the juvenile court judge employed section 115–10 to find Von's out-of-court statements to his mother, Officer Cure, and Jackie Weber admissible. Section 115–10 is an Illinois statutory provision which, when enacted by our legislature, was tailored to comport with sixth amendment confrontation clause requirements (U.S. Const., amend. VI) as delineated in *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). See *People v. Stechly*, 225 Ill. 2d 246, 264 (2007). Under *Roberts*, it was not a violation of the sixth amendment confrontation clause to admit out-of-court hearsay statements into evidence as long as the statements were found to be reliable, either because the evidence fell within a firmly rooted hearsay exception or because there were other "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539.

In 2004, while respondent's appeal was pending in the appellate court, the United States Supreme Court overturned *Roberts* and devised a fundamentally new procedure for analyzing confrontation clause claims. See *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). In *Crawford*, the defendant claimed that his sixth amendment confrontation rights had been violated because his wife's tape-recorded statement to police was admitted into evidence at defendant's trial although she did not testify at trial due to defendant's invocation of the spousal privilege. After engaging in a lengthy examination of the historical underpinnings of the confrontation right guaranteed by the sixth amendment, the Court concluded that when an out-of-court statement is "testimonial" in nature "the only indicium of reliability sufficient to satisfy

constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68-69, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. Thus, the Court held that testimonial out-of-court statements may be admitted as evidence at trial only if the declarant testifies or the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 53-54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365-66. The Court explained:

> "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.' Certainly none of the authorities discussed above acknowledges any general reliability exception to the common-law rule. Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined." *Crawford*, 541 U.S. at 61, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370.

The Court then concluded, "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

Although the *Crawford* Court held that sixth amendment protections turned on whether or not the out-of-court statements sought to be admitted are "testimonial," the Court did not attempt to define what it meant by "testimonial" hearsay. It held, however, that,

at a minimum, it must include statements made in the course of police interrogation, as well as statements that are the result of other types of formal questioning–such as testimony given at a preliminary hearing, before a grand jury, or at a former trial–where there was no opportunity for defendant to cross-examine. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

As noted above, in the case at bar the appellate court relied on *Crawford* to reverse respondent's adjudication, finding that Von's out-of-court statement to Officer Cure and his videotaped statement to Weber were "testimonial" and, therefore, respondent's sixth amendment confrontation rights were violated by their admission. The State timely filed a petition for leave to appeal from the appellate court's judgment. Initially, we held the State's petition because we already had before us a factually similar case, *People v. Stechly*, No. 1–01–2869 (2003) (unpublished order under Supreme Court Rule 23), which we believed might resolve the issues raised in the case at bar. While *Stechly* was before us, the United States Supreme Court decided *Davis v. Washington*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006), which provided additional insight into what the Court meant by "testimonial" statements.

In *Davis*, the Court considered whether statements made to law enforcement personnel in two separate cases were "testimonial" and, thus, subject to the requirements of the sixth amendment confrontation clause. The first case involved statements made during a tape-recorded call to a 911 emergency operator and the second case involved statements made by the defendant's wife to police officers at the scene of a domestic battery after the altercation had ended. In both cases the statements were held to be nontestimonial and admitted into evidence although the declarant did not testify at trial.

On review, the Court held that the statements made to police officers at the scene of the domestic altercation were testimonial, but that the statements made on the 911 tape recording were not. The distinction was not based on the 911 operator's status because the Court assumed that the 911 operator was an agent of the police. Rather, the Court explained that a statement to law enforcement personnel will be deemed "nontestimonial" if the circumstances objectively indicate that the primary purpose of the interrogation is to gather information to meet an ongoing emergency. On the other hand,

statements to law enforcement will be deemed "testimonial" if circumstances objectively indicate there is no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events to identify or convict the perpetrator. *Davis*, 547 U.S. at 826-30, 165 L. Ed. 2d at 239-40, 126 S. Ct. at 2276.

With the benefit of both the *Crawford* and *Davis* opinions, this court filed its decision in *People v. Stechly*, 225 Ill. 2d 246 (2007). In *Stechly*, the defendant challenged his convictions for predatory sexual assault of a child and aggravated criminal sexual assault. He claimed that, pursuant to *Crawford*, his sixth amendment confrontation rights had been violated by the admission of out-of-court statements the unavailable witness, five-year-old M.M., had made to three persons: Joan G., M.M.'s mother; Ann Grote, a clinical specialist and head of the child-abuse team at the hospital where M.M. was taken for examination; and Perry Yates, the social worker at the school where M.M. attended kindergarten.

In a plurality decision, Stechly's convictions were reversed and the matter remanded to the circuit court with directions that a hearing be held on the issue of forfeiture by wrongdoing. Applying *Crawford* to the defendant's confrontation clause claim, we first looked at the threshold issue, *i.e.*, whether the out-of-court statements were "testimonial." Six justices agreed that M.M.'s statements to her mother were nontestimonial and that her statements to Grote and Yates were testimonial. However, three of the six justices (Justices Freeman, Fitzgerald and Burke) held that admission of the testimonial statements could not be considered harmless error and that reversal was required, while the other three justices (Chief Justice Thomas and Justices Garman and Karmeier) dissented from the reversal, holding that the admission of the testimonial hearsay did not amount to reversible error "in light of the overwhelming evidence against defendant that was properly admitted." *Stechly*, 225 Ill. 2d at 330 (Thomas, C.J., dissenting, joined by Karmeier, J.). Justice Kilbride agreed that reversal was required, but reached that conclusion for reasons that were different from those expressed by the plurality. Justice Kilbride held that M.M.'s statements should have been excluded pursuant to section 115–10 because the evidence did not adequately show that M.M. was "unavailable" to testify. Also, employing an analysis that did not take into consideration the age of

the child-declarant, Justice Kilbride found that *all* of M.M.'s statements, including those made to her mother, were testimonial.

After we filed our decision in *Stechly*, we granted the State's petition for leave to appeal in the case at bar. *Crawford*, *Davis* and *Stechly* provide us with an understanding of the current parameters of the confrontation clause guarantee. Keeping them in mind, we now turn to the case at bar.

### B. *Admissibility of Von's Videotaped Statement to Weber*
#### 1. Forfeiture

At the outset, the State presents a brief, one-paragraph argument contending that respondent forfeited the right to raise a confrontation clause claim by his failure to object at trial, on confrontation clause grounds, to the admission of hearsay testimony. We rejected an identical argument in *Stechly* and for the reasons expressed therein reject the State's claim here as well.

As we explained in *Stechly*, *Crawford* announced a fundamentally new rule regarding the effect of the confrontation clause on the admission of hearsay statements and, thus, the rule should be applied retroactively to all cases pending on direct review or not yet final when *Crawford* was decided. *Stechly*, 225 Ill. 2d at 268, quoting *People v. Sisavath*, 118 Cal. App. 4th 1396, 1400, 13 Cal. Rptr. 3d 753, 756 (2004). Moreover, as we recognized in *Stechly*, "it would be manifestly unfair to hold defendant to have waived claims by not raising them at trial when those claims are based on a rule which was only announced during the pendency of his appeal." *Stechly*, 225 Ill. 2d at 268. This reasoning is equally applicable to the case at bar. Here, too, fairness requires a finding that respondent did not forfeit the right to raise a confrontation clause claim by his failure to make a more specific objection at trial to the admission of hearsay testimony.

#### 2. Videotaped Statement to Weber: Testimonial or Nontestimonial

The State agrees that, pursuant to *Stechly*, Von's statement to his mother was nontestimonial and his statement to Officer Cure was testimonial. The State's only challenge is to the appellate court's determination that Von's videotaped statement to Weber was

-12-

testimonial. The State asks that we reverse this determination, maintaining that the videotaped statement is nontestimonial because neither Von nor Weber was acting to a substantial degree to produce a statement for future trial. In support of this contention, the State maintains that: (1) there is no evidence to show Weber's intent because Weber did not testify at trial, (2) in general, the primary concern of child advocates and child advocacy centers, such as the Carrie Lynn Children's Center here, is the physical, mental and emotional welfare of child victims; (3) Weber's interview occurred prior to the time that Rolandis was arrested and the juvenile petition was filed, indicating that the purpose of the interview was to assess whether abuse occurred, rather than prepare for trial; and (4) Weber was not acting as an agent of law enforcement because, as a child advocate, her primary focus was the best interests of the child.

The State admits that a majority of courts in other jurisdictions have held statements made to child advocates, under circumstances similar to those here, to be testimonial. However, the State argues that these cases are distinguishable or wrongly decided. Further, the State insists that the fact that Weber conducted her videotaped interview with Von under the observation of a police officer does not mean that Weber was acting as an agent of law enforcement. The State asks that we take into consideration the fact that Weber's interview was conducted as part of a statutorily encouraged, multidisciplinary response to child sexual abuse, the purpose of which is to reduce trauma to child victims. The State contends that a failure to recognize these multidisciplinary interviews as nontestimonial will "discourage collaboration and video-taping, which is important in limiting the trauma to which children are subjected when they are involved in such investigations."

Finally, the State contends that, because Weber's interview was not police interrogation, we may consider the viewpoint of the declarant, six-year-old Von J., in determining whether the statement is testimonial. The State urges us to find that, in the case at bar, Von's videotaped statement is nontestimonial because a reasonable six-year-old would not have anticipated that his statement to Weber would be used for a future prosecution.

In response, Rolandis argues that the circumstances of this case objectively indicate that Weber was acting as an agent of the police

and that the primary purpose of her interview was to establish or prove past events that would be relevant in a future criminal prosecution. Thus, respondent contends that the appellate court correctly ruled that the videotaped statement to Weber was testimonial and should not have been admitted. We agree.

In *Stechly*, the plurality devised a framework for determining whether an out-of-court statement is testimonial. It held that a testimonial statement is one which is (1) made in a solemn fashion, and (2) intended to establish a particular fact. In general, a statement is testimonial if the declarant is acting in a manner analogous to a witness at trial, describing or giving information regarding events that have already occurred. *Stechly*, 225 Ill. 2d at 281-82. Of course, this framework begs the question, "Whose intent is determinative–the questioner or the declarant?" After reviewing *Crawford* and *Davis*, the *Stechly* plurality concluded that, when the statement under consideration is the product of questioning, either by the police or someone acting on the behalf of law enforcement, it is the objective intent of the questioner that is determinative. *Stechly*, 225 Ill. 2d at 284-85. However, where statements are not the product of law enforcement interrogation, the proper focus is on the intent of the declarant and the inquiry should be whether the objective circumstances would lead a reasonable person to conclude that his statement could be used against the defendant. *Stechly*, 225 Ill. 2d at 288-89. Moreover, the plurality held that, when the declarant is a child, the child's age may be "one of the objective circumstances to be taken into account in determining whether a reasonable person in his or her circumstances would have understood that his or her statement would be available for use at a later trial." *Stechly*, 225 Ill. 2d at 295-96.

Applying this framework to the case at bar, we first must determine whether Von's tape-recorded interview with Weber resulted in a testimonial statement, *i.e.*, whether it was solemn statement made with the intent of establishing facts regarding past events. Pursuant to *Stechly*, the first step in this inquiry is to determine whether Weber was acting as a representative of the police when she obtained Von's recorded statement.

As the State points out, the Carrie Lynn Children's Center, where Von's interview took place, is one of several accredited child

-14-

advocacy centers in this state "established to coordinate the activities of the various agencies involved in the investigation, prosecution and treatment referral of child sexual abuse." 55 ILCS 80/4(a) (West 2002). Weber, a child advocate and employee of the Center, interviewed Von in furtherance of the "interdisciplinary, coordinated systems approach to the investigation of child sexual abuse." See 55 ILCS 80/4(c)(1) (West 2002). Although Weber did not testify and the record is silent as to the actual purpose of her interview with Von, the record, from an objective viewpoint, indicates that the interview took place at the behest of the police so that a more detailed account of the alleged sexual abuse could be obtained by a trained interviewer and memorialized on videotape. Moreover, because the interview was witnessed by Detective Swanberg and a copy of the videotaped interview immediately turned over to him "as evidence" upon completion of the interview, the objective circumstances indicate that Von's statement was the product of an interrogation, conducted on behalf of the police, intended to gather information and establish past acts for future prosecution. Clearly, then, it must be concluded that Weber was acting as a representative of the police, assisting in their investigation of an alleged child sexual abuse, when she interviewed Von.

It is true that the purpose of this type of interdisciplinary, collaborative protocol is to "minimize the stress created for the child and his or her family by the investigatory and judicial process, and to ensure that more effective treatment is provided for the child and his or her family." See 55 ILCS 80/3(d) (West 2002). However, there is absolutely no indication that, in the case at bar, Weber's interview of Von was conducted, to a substantial degree, for treatment rather than investigative purposes. Accordingly, we are compelled to conclude that Von's videotaped statement was testimonial in nature and, because Von did not testify at trial and there was no prior opportunity for cross-examination, it was improperly admitted in violation of respondent's confrontation rights. The appellate court's judgment in this regard must be affirmed.

We note, additionally, that our conclusion here is supported by decisions rendered in other jurisdictions. As the State concedes, "the majority of courts to consider the question have found statements to child abuse advocates such as social workers to be testimonial." One

such case is *State v. Snowden*, 385 Md. 64, 867 A.2d 314 (2005). In *Snowden*, a social worker for Montgomery County Child Protective Services in Maryland interviewed three minors (two 10-year-olds and an 8-year-old) who were victims of sexual abuse. The interview took place at the Child Assessment Center in Rockville and was part of a joint investigation with the Montgomery County police department. The Court of Appeals of Maryland held that the statements made to the social worker (Wakeel) were testimonial, stating:

> "[W]e find that the structure, location, and style of the interviews actually support the notion that the children's interviews were a formal and structured interrogation where the responses reasonably would be expected to be used at a later trial. The fact that the interviews were conducted by a licensed sexual abuse investigator, rather than a police officer, is of little persuasive weight in our analysis. ***
>
> Wakeel's role as interviewer was little different from the role of a police officer in a routine police interrogation. Wakeel became involved only after being contacted by the Montgomery County Police Department, which informed her of the substance of the children's accusations. Because Wakeel was performing her responsibilities in response and at the behest of law enforcement, she became, for Confrontation Clause analysis, an agent of the police department." *Snowden*, 385 Md. at 85-86, 867 A.2d at 326-27.

Similarly, in *People v. Sisavath*, 118 Cal. App. 4th 1396, 1402, 1400, 13 Cal. Rptr. 3d 753, 757, 756 (2004), the videotaped statement of a four-year-old sex abuse victim was held to be testimonial. In that case, the child was interviewed by a "forensic interview specialist" at the Fresno County Multi-Disciplinary Interview Center, "a facility specially designed and staffed for interviewing children suspected of being victims of abuse." The interview was observed by a district attorney and a police officer. The court held that the videotaped statement obtained at this interview was testimonial, stating:

> "Under these circumstances, it does not matter what the government's actual intent was in setting up the interview, where the interview took place, or who employed the interviewer. It was eminently reasonable to expect that the

interview would be available for use at trial." *Sisavath*, 118 Cal. App. 4th at 1403, 13 Cal. Rptr. 3d at 758.

More recently, a Florida appellate court reached the same conclusion in *Hernandez v. Florida*, 946 So. 2d 1270 (Fla. App. 2007).[2] In *Hernandez*, an officer investigating the alleged sexual abuse of a child took the child and her parents to the local hospital. At the hospital, a nurse, who was a member of the Child Protection Team (CPT), physically examined the child and questioned her and her parents about the alleged abuse. Because a week had passed since the alleged abuse had occurred, no specimens were taken and no treatment was provided. Also, no referral was made to a physician for follow-up treatment or examination.

The nurse's testimony regarding the child's responses to questioning was admitted at trial pursuant to state statute. However, on review, the court held that the child's statement to the nurse was testimonial and the nurse's testimony was inadmissible because her interview with the child and the child's parents was "the functional equivalent of a police interrogation." *Hernandez*, 946 So. 2d at 1280. The court noted four factors that contributed to its determination: (1) the nurse, as a member of the CPT, was an arm of law enforcement, statutorily bound to work with the police to provide various services "directed to the detection, investigation, and prosecution of child abuse"; (2) the nurse was working in concert with the police, as evinced by the fact that after her examination and questioning of the child, the investigating officer, who had remained at the hospital during the interview, made the decision to charge the defendant; (3) the primary purpose of the examination and questioning was to gather facts for a potential prosecution; and (4) when the interview took place the child was in a place of safety and there was no indication of an ongoing emergency. *Hernandez*, 946 So. 2d at 1280-82.

These same factors are present in the case at bar. The child advocate who interviewed Von was employed by a licensed advocacy

---

[2]In *Hernandez*, the court cited a number of cases from various jurisdictions, including *Snowden* and *Sisavath*, which we have cited above, wherein courts have found statements to be testimonial under facts similar to those present here. See *Hernandez*, 946 So. 2d at 1284-85.

center and, pursuant to the Children's Advocacy Center Act, this Center not only worked in concert with other agencies involved in the investigation and prosecution of child sexual abuse, it was obligated to share information it obtained with the police. See 55 ILCS 80/4(c)(2) (West 2002). Respondent was not charged until after Weber's interview took place and Detective Swanberg had retained a copy of the videotaped interview as evidence. Furthermore, since there is no indication that the primary purpose of the interview was for treatment and because Von was no longer in any danger from the respondent, it must be concluded that the main purpose of the interview was to gather information about past events for potential future prosecution. Thus, here, as in *Hernandez*, the only conclusion we can reach is that the child's statement to the child advocate was testimonial.

We are not unsympathetic to the State's concern that child abuse victims are often unavailable to testify because of their tender years and, for that reason, "*Crawford* is incompatible with the realities of child abuse prosecutions." However, the Court in *Davis*, when faced with a similar argument in regard to victims of domestic violence, stated, "We may not, however, vitiate constitutional guarantees when they have the effect of allowing the guilty to go free." *Davis*, 547 U.S. at 832-33, 165 L. Ed. 2d at 243-44, 126 S. Ct. at 2279-80. Thus here, too, we may not abridge constitutional guarantees simply because they are a hindrance to the prosecution of child sexual abuse crimes.


C. *The State's Alternative Claims*
1. Procedural Default and Forfeiture

As noted above, the State never argued in the appellate court, or raised as an issue in its petition for leave to appeal, that the admission of Von's out-of-court statements to Weber and Officer Cure, though improper, was harmless error. Nor did the State argue below, or in its petition for leave to appeal, that respondent should be precluded from raising a confrontation clause claim pursuant to the doctrine of "forfeiture by wrongdoing." The State concedes that by raising these issues for the first time in its brief before this court, the issues may be deemed forfeited and we need not consider them. The State, however,

asks that we excuse the forfeiture and consider the issues on their merits.

Respondent does not contend that we should forgo addressing the State's alternative claims because they have been procedurally defaulted due to the failure to raise them below. Nor does respondent object to reaching the merits of the State's claims on the ground that the issues were not included in the petition for leave to appeal and are being raised for the first time in the State's brief before this court. Thus, respondent has forfeited any procedural default or forfeiture by the State.

Nevertheless, in recently filed opinions of this court, the failure to include a claim in a petition for leave to appeal has been raised *sua sponte* by this court and relied upon to deny consideration of the claim. See, *e.g.*, *People v. Whitfield*, 228 Ill. 2d 502 (2007); *People v. Robinson*, 223 Ill. 2d 165 (2006). Accordingly, one could interpret these cases as suggesting that the failure to include an issue in a petition for leave to appeal stands as an absolute bar to review by this court. Such an interpretation of these cases, however, would be incorrect. This court has long held that the failure to raise an issue in a petition for leave to appeal is not a jurisdictional bar to this court's ability to review a matter but, rather, "a principle of administrative convenience." See *Dineen v. City of Chicago*, 125 Ill. 2d 248, 265-66 (1988). In other words, this court always has the authority to review a matter not properly preserved, or may decline to do so, as a matter of discretion. Although that discretion should not be exercised arbitrarily, review of an issue not specifically mentioned in a petition for leave to appeal will be appropriate when that issue is "inextricably intertwined" with other matters properly before the court. *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 430 (2002).

In a situation, such as here, where a court of review determines that certain evidence was improperly admitted at trial, it is entirely appropriate to consider whether any exceptions to inadmissibility apply and whether the admission of evidence, though error, was harmless. These matters are inextricably intertwined with the determination of whether the error that occurred requires reversal. Thus, we consider the State's alternative claims despite its failure to present them in the petition for leave to appeal.

## 2. Forfeiture by Wrongdoing

The State asks us to find that respondent forfeited the right to challenge the admission of Von's testimonial hearsay statements on confrontation grounds because respondent's wrongdoing caused Von's unavailability. The State acknowledges that, in *Stechly*, this court was split on the proper application of the forfeiture-by-wrongdoing doctrine–four justices held that a defendant forfeits his confrontation rights *only if* he acts with the intention of causing the witness to be unavailable to testify and that it is insufficient to show that the wrongful conduct was *causally linked* to the witness' unavailability; two justices held that it was unnecessary to show that the accused intended to prevent the witness from testifying when he committed the wrong. The State contends, however, that even the *Stechly* plurality recognized that most courts have held that intent need not be proven and may be presumed when the wrongdoing is murder. The State, therefore, asks that we expand on this concept and hold that in child sexual abuse cases, as in murder cases, intent may be presumed.

The State explains its rationale, stating, "in child sexual abuse cases, the abuse may well cause the victim to be unavailable to testify at trial *** because of trauma, fear, or the victim's predisposed incompetence to testify." The State also cites public policy and the "high importance" society places on protecting children as additional reasons for permitting courts to presume an intent to prevent the witness from testifying when applying the forfeiture-by-wrongdoing doctrine in child sexual abuse cases.

As an alternative argument, the State contends that, even if we decline to hold that intent may be presumed in child sexual abuse cases, we should find that intent was proven in the case at bar. As evidence that respondent intended to prevent Von from testifying, the State points to the evidence that respondent made Von "pinky swear" not to tell anyone about the abuse.

The State's arguments concerning forfeiture by wrongdoing were presented in its brief, which was submitted prior to the time that the United States Supreme Court released its decision in *Giles v. California*, 554 U.S. ___, 171 L. Ed. 2d 488, 128 S. Ct. 2678 (2008). *Giles* demonstrates the proper application of the forfeiture-by-wrongdoing doctrine as it relates to an accused's sixth amendment

-20-

confrontation rights and resolves the debate over the necessity of proving intent. In light of *Giles*, we must reject the State's arguments concerning the application of forfeiture by wrongdoing in the case at bar.

In *Giles*, the defendant shot and killed his ex-girlfriend, Avie, outside defendant's grandmother's home. Although Avie was shot six times, the defendant claimed self-defense, testifying that Avie was jealous, that he knew her to have violent tendencies, and that Avie had come to his grandmother's that day and threatened to kill him and his girlfriend. The prosecution introduced statements Avie had made to a police officer three weeks prior to the shooting when the officer had responded to a domestic violence call. The officer testified that Avie told him defendant accused her of having an affair and had choked her, punched her in the head, and threatened her with a knife, saying that he would kill her if he found that she was cheating on him. After defendant was convicted, he challenged the admission of Avie's out-of-court statement to the officer. On review, the California Supreme Court ruled that the statement was admissible under *Crawford* pursuant to the doctrine of forfeiture by wrongdoing. The court held that defendant had forfeited his right of confrontation because he committed the murder, an intentional criminal act, that rendered Avie unavailable.

The United States Supreme Court reversed, finding that the theory of forfeiture by wrongdoing, which was employed by the California Supreme Court to find the out-of-court statement admissible, was not a recognized exception to the sixth amendment confrontation requirement. The Court held that at common law an unconfronted testimonial statement could not be admitted without a showing that the defendant intended to prevent the witness from testifying. *Giles*, 554 U.S. at ___, 171 L. Ed. 2d at 497, 128 S. Ct. at 2684. In other words, according to the Court, for forfeiture by wrongdoing to apply, the evidence had to show that the defendant engaged in witness tampering or some type of conduct designed to prevent the witness from testifying, thwart the judicial process, or procure the witness' absence from trial. *Giles*, 554 U.S. at ___, 171 L. Ed. 2d at 495-96, 128 S. Ct. at 2683. The Court further noted that it was not an accepted practice at the time the Constitution was adopted to admit statements

on the ground that the defendant's crime was to blame for the witness' absence. The Court stated:

> "The notion that judges may strip the defendant of a right that the Constitution deems essential to a fair trial, on the basis of a prior *judicial* assessment that the defendant is guilty as charged, does not sit well with the right to trial by jury. It is akin, one might say, to 'dispensing with jury trial because a defendant is obviously guilty.' *Crawford*, 541 U.S., at 62." (Emphasis in original.) *Giles*, 554 U.S. at ___, 171 L. Ed. 2d at 499, 128 S. Ct. at 2686.

The Court's majority also rejected a suggestion by the dissent that special confrontation rules might be applicable based on the status of the victims, for example, where the victims are women in abusive relationships. The *Giles* majority stated:

> "The dissent closes by pointing out that a forfeiture rule which ignores *Crawford* would be particularly helpful to women in abusive relationships–or at least particularly helpful in punishing their abusers. Not as helpful as the dissent suggests, since only *testimonial* statements are excluded by the Confrontation Clause. Statements to friends and neighbors about abuse and intimidation, and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules, which are free to adopt the dissent's version of forfeiture by wrongdoing. In any event, we are puzzled by the dissent's decision to devote its peroration to domestic abuse cases. Is the suggestion that we should have one Confrontation Clause (the one the Framers adopted and *Crawford* described) for all other crimes, but a special, improvised, Confrontation Clause for those crimes that are frequently directed against women? Domestic violence is an intolerable offense that legislatures may choose to combat through many means–from increasing criminal penalties to adding resources for investigation and prosecution to funding awareness and prevention campaigns. But for that serious crime, as for others, abridging the constitutional rights of criminal defendants is not in the State's arsenal." (Emphasis in original.) *Giles*, 554 U.S. at ___, 171 L. Ed. 2d at 505-06, 128 S. Ct. at 2692-93.

The *Giles* majority conceded that domestic violence might be a relevant factor in determining whether the forfeiture-by-wrongdoing exception is applicable, stating:

> "Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution–rendering her prior statements admissible under the forfeiture doctrine." *Giles*, 554 U.S. at ___, 171 L. Ed. 2d at 506, 128 S. Ct. at 2693.

Based on the above, the *Giles* majority makes clear that, regardless of how expedient or beneficial it might be to the victim to permit his or her unconfronted, testimonial hearsay to be admitted at trial, the right of confrontation guaranteed an accused by our Constitution must take precedence. The doctrine of forfeiture by wrongdoing may not be employed to deny an accused his confrontation right absent evidence that, when committing the crime or other wrongdoing, the accused was motivated by the desire to prevent the witness from testifying against him at trial.

Applying *Giles* to the case at bar, we find no evidence that respondent ever committed any wrongdoing with the intended purpose that Von be unavailable to testify at trial. It is true that sexual abusers sometimes select children as their victims because children are generally more vulnerable to threats and coercion due to their age and immaturity. However, in the case at bar, there is no indication that when respondent sexual assaulted Von, his assault was motivated in any way by a desire to prevent Von from bearing witness against him at trial. We recognize that, according to the record, after respondent assaulted Von he made Von "pinky swear" not to tell anyone what happened in an attempt to keep his crime a secret. However, there is nothing in the record to indicate that when respondent extracted the promise from Von, he did so in contemplation of some future trial. Thus, whether Von's refusal to testify at trial was due to his embarrassment or because of his "pinky

swear" to respondent is of no matter. Respondent's confrontation rights may not be abridged unless he acted with the intended purpose of procuring Von's absence from trial. Since there is no evidence that respondent intentionally committed any wrongdoing for the purpose of procuring Von's unavailability at trial, the forfeiture-by-wrongdoing doctrine is inapplicable to the case at bar. Having reached this determination, we will go on to determine whether the admission of the testimonial statements to Officer Cure and Jackie Weber, though error, was harmless.

### 3. Harmless Error

As noted in *Stechly*, *Crawford* violations are subject to harmless-error review and the test is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained. *Stechly*, 225 Ill. 2d at 304, citing *People v. Patterson*, 217 Ill. 2d 407, 428 (2005). When deciding whether error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence. *Stechly*, 225 Ill. 2d at 304-05, quoting *Patterson*, 217 Ill. 2d at 428, citing *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981). In the case at bar, we find that the properly admitted evidence overwhelmingly supports the conviction and, for that reason, the admission of Von's testimonial statements to Officer Cure and Weber was harmless beyond a reasonable doubt.

Unlike the situation in *Stechly*, here there was no inconsistency regarding the perpetrator's identity. The properly admitted testimony of Von's mother, Jacqueline M., revealed that, on the day in question, Von came home sometime after noon accompanied by respondent. Jacqueline heard respondent, who waited at the door, call to Von and ask him to come back outside. Uncharacteristically, Von declined and respondent left. Von, immediately upon arriving home, went directly to the bathroom and began to act strangely: coughing, spitting, and washing his mouth out with water. After returning to the bathroom a second time to wash his mouth out with water, Von spontaneously revealed to Jacqueline that respondent had made him "suck his dick."

-24-

Von's actions upon his return home, which Jacqueline witnessed, correlated to the type of sexual abuse Von said occurred and strongly indicated that the abuse occurred very recently, at a time when Von had been solely in respondent's company. Respondent admitted at trial that he alone walked Von home, through the wooded area. We find that Jacqueline's testimony about her observations of Von's behavior, in addition to her testimony regarding Von's statement to her, overwhelmingly supports the conviction in this case.

We recognize that in *Stechly*, a case similar to the one at bar, a plurality of this court found the improper admission of testimonial statements by two witnesses was not harmless. However, the circumstances in *Stechly* were considerably different and distinguish *Stechly* from the case before us. *In Stechly*, the five-year-old victim, M.M., did not make an immediate outcry. Brenda Galete, M.M.'s babysitter, learned from M.M. on January 13, 1999, that "Bob" had sexually abused M.M. nearly a month earlier, in December 1998. Upon obtaining this information, Galete drove to where M.M.'s mother, Joan, worked and insisted that M.M. be taken to the hospital. At the hospital, M.M. told clinical specialist Ann Grote about the sexual abuse by "Bob." Grote did not inquire into who "Bob" was. Instead, Joan identified "Bob" as defendant, Robert Stechly, who lived in Joan's apartment building and was, at that time, Joan's boyfriend. Subsequently, Stechly was arrested and charged with predatory criminal sexual assault, criminal sexual assault, and aggravated criminal sexual abuse of M.M.

At trial, a serious question arose concerning whether M.M. had, in fact, identified defendant as her abuser. Prior to defendant's trial, at the reliability hearing, Joan testified that, on January 13, 1999, after Galete came to her place of employment and they were en route to the hospital, M.M. described an incident of sexual abuse and told her that "Bob" had been the perpetrator. Although M.M. only identified the abuser as "Bob," Joan said she had understood M.M. to mean the defendant, Bob Stechly. At trial, however, Joan testified that, during the trip to the hospital, M.M. actually told her that "Robert Stechly" was the abuser, identifying him by name. This deviation in Joan's testimony became significant because Brenda Galete testified, in contradiction to Joan's testimony, that Bob Reilly, Joan's nephew, who also lived in an apartment in Joan's building, babysat M.M. "a

lot" and that M.M. "acted strangely" around men in November 1998, long before the time in December 1998 when defendant babysat M.M. and allegedly abused her. Brenda Galete also testified that, on January 13, 1999, when M.M. told her about the abuse, M.M. never specified who "Bob" was. Further, Galete testified that she did not hear M.M. tell Joan anything about the abuse during the trip to the hospital and that she believed that there were others who had molested M.M., including Joan, M.M.'s mother. Also, although defendant had confessed to sexually abusing M.M. after his arrest, the confession was discredited at trial.

It is clear from the facts above that, in *Stechly*, the testimony concerning M.M.'s hearsay statements was, with respect to defendant's identity, both inconsistent and the subject of some dispute. Also, as the *Stechly* plurality pointed out, defendant's original jury trial resulted in a mistrial because the jury was unable to reach a consensus on any of the counts. Though not dispositive, the plurality believed that this fact lent credence to the notion that the evidence of defendant's guilt was closely balanced, even when the improperly admitted evidence was taken into account.

Following the mistrial, defendant was found guilty after a stipulated bench trial. The trial judge considered the same evidence heard by the jury, including the improperly admitted testimony of the hospital clinical specialist, Ann Grote, and the school social worker, Perry Yates. Grote had testified that M.M. identified her abuser only as "Bob," but Yates had testified that when he interviewed M.M. at school, he began the interview by asking M.M. to "tell me about Robert Stechly." The testimony of Yates, in particular, gave heightened support to the notion that M.M. had identified defendant as the perpetrator. For this reason, the improperly admitted evidence tended to resolve the controversy over the identity of M.M.'s abuser and, thus, was not simply cumulative to the properly admitted evidence. Certainly, then, the properly admitted evidence, standing alone, did not overwhelmingly establish the defendant's guilt.

Unlike the situation in *Stechly*, in the case at bar, the properly admitted testimony of Von's mother, Jacqueline, was clear and uncontroverted. It overwhelmingly established respondent's guilt. The improperly admitted evidence was largely repetitive of the evidence presented by Jacqueline and did not resolve any material

-26-

issue. We conclude, therefore, that the admission of Von's testimonial statements made to Officer Cure and Weber, though error, was, under the facts of this case, harmless beyond a reasonable doubt.

## II. Constitutionality of Section 115–10

We note that the State argued in its petition for leave to appeal and in its opening brief to this court that the appellate court below found section 115–10 unconstitutional and, therefore, that it was necessary for this court to consider whether the statute could be saved by severing the offending portions of the statutory provision. In its reply brief, however, the State concedes that there is no need to sever any portion of the statute because the appellate court made only an as-applied finding of unconstitutionality and, thus, the statute will continue to be enforceable in circumstances where it is not unconstitutional. The State cites *People v. Brady*, 369 Ill. App. 3d 836, 847-48 (2007), which held that when a statute is unconstitutional as applied, the State may continue to enforce the statute in circumstances where it is not unconstitutional.

The State has withdrawn the part of its opening brief wherein it addressed the constitutionality and severability of section 115–10. Consequently, the issue is no longer before us.

## CONCLUSION

We agree with the appellate court's ruling that Von's videotaped statement to child advocate Jackie Weber was testimonial under *Crawford* and, for that reason, the admission of the statement at respondent's adjudication trial was in violation of respondent's confrontation right. We have found, however, that the error in admitting this statement was harmless beyond a reasonable doubt because the properly admitted evidence overwhelmingly supports respondent's conviction. Accordingly, we reverse the appellate court judgment, which reversed respondent's adjudication, and we remand to the circuit court with instructions that respondent's adjudication be reinstated.

*Appellate court judgment reversed;*

-27-

*cause remanded.*

JUSTICE THOMAS, specially concurring:

I agree entirely with the outcome and analysis in this case, including the conclusion that the erroneous admission of Von's statements to Cure and Weber was harmless beyond a reasonable doubt. I write separately only to reaffirm my belief that the erroneous admission of the statements at issue in *Stechly* was likewise harmless beyond a reasonable doubt. See *Stechly*, 225 Ill. 2d at 346-53 (Thomas, C.J., dissenting, joined by Karmeier, J.).

JUSTICE KILBRIDE, also specially concurring:

I agree with the majority's holding in all respects other than its framework for determining whether the statement to child advocate Jacqueline Weber was testimonial. As set forth in my dissent in *Stechly*, I believe the proper focus of the inquiry is whether a reasonable adult in the declarant's position would anticipate that the statement likely would be used in a criminal prosecution. *Stechly*, 225 Ill. 2d at 324-25 (Kilbride, J., concurring in part and dissenting in part). Applying that standard to the facts of this case results in agreement with the majority's conclusion that the statement to Weber was testimonial. Accordingly, I specially concur in the majority's decision.

In *Stechly*, the plurality devised a test for determining whether a statement is testimonial that shifts the focus from the declarant's intent to that of the questioner depending on the circumstances of the case. See *Stechly*, 225 Ill. 2d at 284-92. The plurality held that the objective intent of the declarant is the focus of the inquiry when a statement is not produced by law enforcement interrogation. *Stechly*, 225 Ill. 2d at 289. The standard is whether the objective circumstances would lead a reasonable person to anticipate that his or her statement likely would be used in a criminal prosecution. *Stechly*, 225 Ill. 2d at 292. When a statement is produced by law enforcement interrogation, however, the focus is on the questioner's objective intent in eliciting the statement. *Stechly*, 225 Ill. 2d at 284-85.

The shifting focus of the inquiry from *Stechly* was based on the plurality's reading of the Supreme Court's decision in *Davis v.*

*Washington*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006). *Stechly*, 225 Ill. 2d at 267-68. The plurality acknowledged that, prior to *Davis*, many authorities had concluded that the focus of the inquiry was always on the declarant's intent in giving the statement. *Stechly*, 225 Ill. 2d at 290-91. According to the plurality, though, *Davis* modified the analysis by indicating that when a statement is the product of police questioning, the intent of the law enforcement officer in taking the statement is the focus. *Stechly*, 225 Ill. 2d at 267.

I continue to disagree with the plurality's interpretation of *Davis*. As explained in my separate writing in *Stechly*, the Supreme Court's decision in *Davis* did not change the focus of the inquiry for determining whether a statement is testimonial. *Stechly*, 225 Ill. 2d at 324-25 (Kilbride, J., concurring in part and dissenting in part). Rather, *Davis* indicated that the perspective of the declarant remains the focus of the inquiry. As noted in *Davis*, "even when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate." *Davis*, 547 U.S. at 822 n.1, 165 L. Ed. 2d at 237 n.1, 126 S. Ct. at 2274 n.1. Further, the *Stechly* plurality acknowledged "ultimately it is the declarant's intent to which the confrontation clause looks." *Stechly*, 225 Ill. 2d at 290. Thus, I continue to believe that the intent of the declarant is always the proper focus in determining whether a statement is testimonial.

In *Stechly*, I also disagreed with the plurality's conclusion that a child's age "is among the circumstances potentially relevant to evaluating whether the objective circumstances of the statement would have led a reasonable declarant to understand that his or her statement could be used in a subsequent prosecution of the defendant." *Stechly*, 225 Ill. 2d at 296. In my view, the cases deciding that a child's age should not be considered are persuasive. *Stechly*, 225 Ill. 2d at 325 (Kilbride, J., concurring in part and dissenting in part) (citing *People v. Sisavath*, 118 Cal. App. 4th 1396, 1402 n.3, 13 Cal. Rptr. 3d 753, 758 n.3 (2004), and *State v. Snowden*, 385 Md. 64, 90-91, 867 A.2d 314, 329 (2005)).

Specifically, the *Snowden* court recognized that the confrontation clause is designed to protect fundamental rights of the accused and the interest in shielding victims from testifying may never outweigh

the explicit constitutional right to be confronted with the witnesses at trial. *Snowden*, 385 Md. at 90, 867 A.2d at 329, citing *Coy v. Iowa*, 487 U.S. 1012, 1019-21, 101 L. Ed. 2d 857, 866-67, 108 S. Ct. 2798, 2802-03 (1988). Accordingly, the court concluded that an objective person standard, rather than an objective child of the witness' age, should be used in determining whether a statement is testimonial and subject to the confrontation clause guarantee. *Snowden*, 385 Md. at 90-91, 867 A.2d at 329.

As noted, the *Stechly* plurality held that a child's age may be considered in deciding whether a reasonable declarant would comprehend that his or her statement could be used in a subsequent criminal prosecution. *Stechly*, 225 Ill. 2d at 295-96. Thus, under the plurality's holding, the confrontation clause will not apply to certain out-of-court statements by children simply because they are incapable of anticipating that their statements could be used in a subsequent prosecution. The confrontation clause provides, however, that a criminal defendant "shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. The plain language of the confrontation clause applies to all witnesses. The *Stechly* plurality's framework for determining whether a statement is testimonial cannot be squared with the confrontation clause because it exempts an entire category of out-of-court statements from confrontation clause protections. *Stechly*, 225 Ill. 2d at 326 (Kilbride, J., concurring in part and dissenting in part).

Although testimonial out-of-court statements by child witnesses clearly may not be exempted from the protections of the confrontation clause, I emphasize that there are a number of ways to reduce any impact of testifying. See *Stechly*, 225 Ill. 2d at 326-27 (Kilbride, J., concurring in part and dissenting in part). In particular, it may be appropriate to expand the use of closed-circuit television as a way to reduce or eliminate the impact of testifying. See 725 ILCS 5/106B–5 (West 2006). There may also be other ways to eliminate any adverse effects of testifying in compliance with the confrontation clause. The interest in shielding a witness from testifying, however, may not outweigh a defendant's constitutional right to be confronted with the witnesses at trial. *Snowden*, 385 Md. at 90, 867 A.2d at 329, citing *Coy*, 487 U.S. at 1019-21, 101 L. Ed. 2d at 866-67, 108 S. Ct. at 2802-03.

In sum, I contend the applicable standard for determining whether Von's statement is testimonial is whether a reasonable adult in his position would expect that the statement likely would be used in a subsequent criminal prosecution. *Stechly*, 225 Ill. 2d at 327 (Kilbride, J., concurring in part and dissenting in part). Under that standard, Von's statement to Weber was testimonial. His statement was made in an interview at a child advocacy center. The circumstances of the interview were sufficiently formal and structured to result in a solemn statement. I agree with the majority that there is no indication that the primary purpose of the interview was for treatment or to protect Von from an ongoing emergency. The interview was focused on recounting past events. Thus, Von was acting in a manner analogous to a witness at trial by describing past events. Also, a reasonable adult may have recognized that the child advocate was a "mandated reporter" obligated to share information with law enforcement. See 55 ILCS 80/4(c) (West 2002). Given these objective circumstances, a reasonable adult in Von's position would anticipate that his statement likely would be used in a criminal prosecution.

Thus, although I disagree with the majority's framework for determining whether a statement is testimonial, I agree that Von's statement to Weber was testimonial and was admitted in violation of the confrontation clause. I also agree with the majority's decision on forfeiture by wrongdoing and harmless error. Accordingly, I specially concur in the majority's judgment.