NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231330-U

NO. 4-23-1330

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 4, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Jersey County |
| JUWAN A. WALLACE, | ) | No. 21CF56 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Allison S. Lorton, |
| | ) | Judge Presiding |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Although admission of the now-deceased victim's testimonial statement to police
        was error, such error was harmless beyond a reasonable doubt.

¶ 2     Defendant Juwan A. Wallace was convicted of attempted aggravated criminal

sexual abuse (720 ILCS 5/8-4, 11-1.60(a)(1)(3) (West 2020)) and sentenced to two years'

imprisonment. On appeal, he argues that the trial court erred in allowing the State to admit certain

out-of-court statements made by the victim to a sheriff's deputy where she was not available for

cross-examination at trial due to her death. We affirm.

¶ 3                              I. BACKGROUND

¶ 4                              A. Charges

¶ 5     On February 21, 2021, defendant was charged by information with attempted

aggravated criminal sexual assault. *Id.* §§ 8-4, 11-1.30(a)(5)Specifically, the information alleged

that defendant, "by the use of force, held the victim, [K.R.], down on the couch with his arm, the victim being 60 years of age or older when the act was committed, and held his penis near the victim's mouth and stated 'Do you like what you see then put it in your mouth.' " The information was amended in November 2022, replacing the words "by the use of force" with "physically confined" and further adding that defendant restrained K.R. "with his arm and leg."

¶ 6                                 B. Motion *In Limine*

¶ 7          On June 29, 2022, defendant filed a motion *in limine* to bar the introduction of "any and all out-of-court statements" made by K.R. to the police. Specifically, the motion asserted that (1) defendant believed the State intended to introduce statements made by K.R. during the initial investigation, (2) K.R. had since passed away, and (3) K.R.'s statements constituted inadmissible hearsay. Defendant concluded that "[a]ny attempts to introduce said statements into evidence violate Defendant's constitutional right(s) to confront and cross examine his accuser."

¶ 8          A hearing on defendant's motion followed.

¶ 9                             1. *Motion In Limine Hearing*

¶ 10          During the February 21, 2021, hearing on defendant's motion *in limine*, Jersey County Sherriff's Deputy Kevin Ayres was called to respond to a call of a disturbance at a residence in Jersey County, Illinois. The matter was resolved before the police arrived. About 10 minutes later, a second call came in reporting a disturbance between defendant and K.R. Upon his arrival at the residence, Deputy Ayres could hear arguing coming from the back of the residence. He also said that a male named Bill Hawkins was yelling at defendant to exit the residence.

¶ 11          Once inside the residence, Deputy Ayres saw defendant "over the top" of K.R., " 'trying to get [her] to put his penis in her mouth.' " After pulling defendant away, handcuffing him, and placing him in a squad car, Deputy Ayres went back into the residence. K.R. told him

that she had tried to get defendant off her but could not and defendant " 'started whipping his penis out of his pants at first, then started making the comments, "Do you like what you see?" ' " K.R. responded to defendant, saying " 'It's not the size of the penis anyway. It is how you use it that matters.' " K.R. told Deputy Ayres that defendant was not able to put his penis in her mouth. Defendant was not in the residence when K.R. made these statements.

¶ 12        Deputy Ayres also confirmed that K.R. had passed away.

¶ 13        2. *The Court's Ruling*

¶ 14        The trial court denied defendant's motion respecting K.R.'s statements to Deputy Ayres, stating as follows:

> "Per the testimony of Deputy [Ayres] and his report, the statements made to him by [K.R.] occurred immediately after the incident in response to questions posed by Deputy [Ayres]. [K.R.'s] statements were made in response to questions posed by Deputy [Ayres] but the court finds the statements to be made immediately after the occurrence without sufficient time to fabricate, as such statements are consistent with the testimony of Deputy [Ayres's] account of the incident, or part thereof, he personally witnessed."

¶ 15        C. Trial

¶ 16        The case proceeded to trial on December 20, 2022. According to Deputy Ayres, he and his partner had been called to a residence at about 12:42 p.m. concerning a disturbance but were told the matter had been resolved. They were called to the residence again at approximately 1:30 p.m., also concerning a disturbance. Ayres said that "when I exited my vehicle I heard *** yelling coming from behind the residence." He then walked around the residence and saw another

individual, Bill Jones, holding the door open. Deputy Ayres said he entered the residence and "observed [K.R.] on the couch." He explained:

> "I observed [defendant] over [K.R.]. Had his left leg up on the couch. He had his right arm over not holding [K.R] but over holding restraining basically she couldn't get up. [K.R.] was waving her arm in the air trying to push him away. [In defendant's] right hand he had his penis. Uh, he was waving it in front of [her] face. *** I heard [defendant] say, 'If you like what you see.' "

At that point defendant objected, which was overruled.

¶ 17    Deputy Ayres continued to testify concerning his observations, stating:

> "[Defendant] made the statement as he was *** waving his penis around [her] face. 'Do you like what you see then put it in your mouth.' I immediately grabbed [defendant], pulled him off of [her] away from [her] and I handcuffed him. I escorted him out to my squad car."

He said defendant's penis was about three feet away from K.R., "[i]f that." Later, on cross-examination, he said the distance was between two and three feet. "[Defendant] was standing at the couch. She was leaning back on the couch." Ayres added, "[H]e was closer than three feet but with her leaning back I'm going to suggest maybe two, three feet back."

¶ 18    Deputy Ayres said he talked with another officer outside the residence for a few moments and then returned inside and spoke with K.R.. Counsel asked Ayres if he knew K.R.'s age, and he responded, "I believe, 68 years old. *** 65 or 68. Somewhere around there. I can't remember without looking at my report the exact age right now." Counsel then asked if Ayres was positive she was over the age of 60, to which Deputy Ayres said, "Yes, I am." Ayres said he had

known K.R. for a while. Defendant did not raise a specific objection concerning the questioning about K.R.'s age.

¶ 19        The State asked Deputy Ayres whether K.R. had indicated to him "whether or not *** [defendant] was able to place his penis in her mouth," which drew an objection from defense counsel that the question "tends to violate the court's pre-trial ruling." The trial court overruled the objection, stating that K.R.'s conversations with Ayres immediately following his arrival at the residence were admissible.

¶ 20        At this point in Deputy Ayres's testimony, the parties apparently agreed that he should read the specifics of his report concerning statements made by K.R. to ensure that he would not go beyond the testimony the trial court approved in ruling on defendant's motion *in limine*. According to Deputy Ayres, his report stated as follows:

> " 'I went back to speak with [K.R.] about the situation. [K.R.] stated she tried to get [defendant] off her but she could not. [K.R.] is 65 years of age and [defendant] is 28 years of age. [She] state[d] [defendant] was not able to put his penis into her mouth. [K.R.] advised she could not get [defendant] off of her. I did observe [K.R.] trying to push [defendant] away from her but she was unsuccessful.' "

¶ 21        Deputy Ayres read another portion from his report: " '[K.R.] stated he started whipping his penis out of his pants at first then started making the comments did you like what you see. [K.R.] then stated it's not the size of the penis anything anyway. It's how you use it that matters.' " Ayres then identified defendant in the courtroom. On cross-examination, Deputy Ayres was asked to reiterate what he saw when he arrived, which he did. Ayres testified that he observed defendant's penis exposed; "It was in his hand. His hand was wrapped around. I could not tell if it was erect at that time."

¶ 22    Testifying on his own behalf, defendant said that there had been only one police call to the residence on the day in question, not two; he also denied that Deputy Ayres had been present that day at all. Defendant admitted he had been drinking that day but said that he did not intentionally expose himself to K.R. According to defendant, he was on his way to use the bathroom when the incident occurred.

"Q. Okay. So, did you get your penis out on the way to use the bathroom?

A. Because—yes. The bathroom is on my left if I'm sitting here and Bill and [K.R.] were sitting in front. The bathroom's on the left on the other side of the TV and I went to the bathroom and Bill reminded me about the how he runs the faucet water. So, I turned around with my penis in my hand and after that—the pathways are narrow. So, I kind of lost balance and then soon as that happened [Officer] Jeff Klunk opens up the door and basically doesn't say nothing. I just turn around kind of put my hands behind my back and walked towards him."

¶ 23    The following exchange between counsel and defendant then occurred:

"Q. So, is it your testimony that you went to the restroom and were getting ready to use the restroom, in the course of that you unzipped your pants. Okay and then Bill reminds you that can't use the restroom. Can't flush it.

A. Correct.

Q. Can't flush it. Right?

A. Correct.

Q. So, do you neglect to zip your pants back up as you exit the bathroom?

A. I didn't—I wasn't thinking. I didn't—I figured it would just be one step towards the door maybe two at the most because it's not a very big trailer and I was just going to piss out the door for the most part."

Defendant denied making any statements to K.R. about his penis or holding her down, but he did acknowledge that he inadvertently put his hands on her when he lost his balance.

¶ 24    At the conclusion of the evidence, the trial court took the matter under advisement for disposition.

¶ 25                                D. Finding of Guilt

¶ 26    In an order entered December 28, 2022, the trial court found defendant guilty of attempted aggravated criminal sexual abuse, a lesser-included offense of attempted aggravated criminal assault. 720 ILCS 5/8-4, 11-1.60(a)(1)(3) (West 2020). According to the court's written order:

> "Court having considered the testimony of Deputy Kevin [Ayres] and the testimony of Defendant, finds credible the testimony of Deputy Kevin [Ayres] as to what he personally observed when responding to the camper trailer. Deputy Ayres testified he viewed [K.R.] on the couch, the Defendant's leg on [K.R.], his arm restraining [K.R.], with the Defendant's penis in his hand, stating 'Do you like what you see then put it in your mouth.' Deputy [Ayres] testified [K.R.] was waiving [*sic*] her arm in the air trying to push him away. Deputy [Ayres] testified that the Defendant's penis, in his hand, was approximately three feet away from [K.R.], who was seated on the couch at the time. Deputy [Ayres] pulled the Defendant[ ] off [K.R.] and secured him in the squad car."

¶ 27    The order then noted that, pursuant to the trial court's prior ruling on defendant's motion *in limine*:

> "Deputy [Ayres] was permitted to testify as to statements made by the victim to Deputy [Ayres] immediately following the event. Deputy [Ayres] testified as follows: '[K.R.] stated, "he started whipping his penis out of his pants at first then started making the comments did you like what you see.["] [K.R.] then stated it's not the size of the penis anyway. Its how you use it that matters.' "

¶ 28    The trial court continued: "Court finds the Defendant's testimony not credible. The Defendant denied that Deputy [Ayres] was even present at the scene. Defendant's version of the events, that he was on his way to relive himself outside when he fell into the victim is not credible." Finally, the court concluded: "Court finds that the Defendant holding his penis, while pinning [K.R.], over 60 years of age, on the couch and stating, 'Do you [like] what you see then put it in your mouth,' constitutes a substantial step towards the commission of criminal sexual abuse."

¶ 29                    E. Posttrial Motion

¶ 30    On January 26, 2023, defendant filed his posttrial motion and motion for judgment of acquittal notwithstanding the verdict, arguing, *inter alia*, that he was not afforded a fair trial and was denied due process of law and further that the State improperly "elicited testimony from Deputy Kevin [Ayres] in violation of the court's pretrial ruling regarding the passing of the alleged victim in this matter." Defendant's motion was denied on August 16, 2023, and sentencing was scheduled for October 25.

¶ 31                    F. Sentencing

¶ 32          On October 25, 2023, defendant was sentenced to two years in prison, with credit for days served in custody. Defendant filed his notice of appeal on November 20, 2023, and an amended notice of appeal on December 21, 2023.

¶ 33                              II. ANALYSIS

¶ 34          Defendant argues that K.R.'s statements made to Deputy Ayres were testimonial evidence and that their admission violated the confrontation clause because she was unavailable for cross-examination due to her death prior to trial. In response, the State argues that defendant forfeited this argument, at least as far as the statement related to K.R.'s age, because his posttrial motion did not raise the issue. Defendant contends that the doctrine of plain error prevents forfeiture.

¶ 35                    A. Plain Error Doctrine—K.R.'s Age

¶ 36          We begin by assessing whether defendant preserved his objection to the admission of K.R.'s pretrial statement concerning her age and if not, whether the plain error doctrine applies to prevent forfeiture. The plain error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). In the first instance, a defendant must prove "prejudicial error." *Id.* "That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Id.* In the second instance, a defendant "must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id.* The ultimate question of whether a forfeited claim is subject

to the plain error doctrine is a question of law that is reviewed *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485 (2010).

¶ 37 As defendant properly notes, establishing that K.R. was over the age of 60 at the time of the criminal activity is part and parcel of the offense for which defendant was convicted. See 720 ILCS 5/11-1.60(a)(1)(3) (West 2020). We note that no specific objection was made to K.R.'s comment about her age in defendant's motion *in limine*, no contemporaneous objection was raised when Deputy Ayres testified about K.R.'s age at trial, and no mention of the statement regarding her age was made in defendant's written posttrial motion. Defendant's posttrial motion stated only that "[t]he state elicited testimony from Deputy Kevin [Ayres] in violation of the court's pretrial ruling regarding the passing of the alleged victim in this matter." Yet, the trial court's motion *in limine* ruling did not place any limitations on the State's use of K.R.'s statement—rather, the order denied defendant's motion *in limine* that sought to keep the statement out of evidence. We conclude, therefore, that any objection to the admission of K.R.'s prior statement concerning her age was forfeited. *Snowstar Corp. v. A&A Air Conditioning & Refrigeration Service, Inc.*, 2024 IL App (4th) 230757, ¶ 83 (stating preservation of an alleged error for appeal requires a party to object specifically at trial and in a posttrial motion).

¶ 38 As to whether the plain error doctrine acts to save defendant's forfeiture, we note that defendant cannot establish prejudice or that the purported error, if one occurred, affected the fairness of the trial. Deputy Ayres testified that he had known K.R. for a while and that he believed her to be over the age of 60. In fact, he testified that she was either 65 or 68 years old. The trial court, as the trier of fact, could have reasonably relied upon Ayres's testimony about K.R.'s age without resorting to her statement.

¶ 39     Moreover, even had defense counsel successfully objected to Deputy Ayres's statement regarding K.R.'s age, the State could have easily established her age by the admission of a certified copy of her death certificate or by other reliable means. See, *e.g.*, *People v. Woods*, 214 Ill. 2d 456, 470 (2005) (stating a defendant's lack of a timely and specific objection to the foundation for the admission of evidence deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level). Either way, we conclude that even if it was error to permit the statement regarding K.R.'s age into evidence, any such error was harmless. Thus, we must honor defendant's procedural forfeiture of the argument.

¶ 40           B. Testimonial Statements—Defendant's Actions/Statements

¶ 41     Regarding defendant's confrontation clause argument, the first question before us is whether K.R.'s statements to Deputy Ayres about defendant's actions were testimonial statements that triggered confrontation-clause protections. We review this issue *de novo* because the question is one of law and does not involve the discretion typically involved in most evidentiary rulings. *People v. Hall*, 198 Ill. 2d 173, 177 (2001); *People v. Schwandt*, 2022 IL App (4th) 200583, ¶ 11.

¶ 42                1. *Confrontation Clause*

¶ 43     The sixth amendment's confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const. amend. VI; see also Ill. Const. 1970, art. I, § 8. "The right of confrontation applies to testimonial evidence." *People v. Munoz-Salgado*, 2016 IL App (2d) 140325, ¶ 9. Thus, "a testimonial statement of a witness who does not testify at trial is never admissible unless (1) the witness is unavailable to testify, and (2) the defendant had a prior opportunity for

- 11 -

cross-examination." (Emphasis omitted.) *People v. Stechly*, 225 Ill. 2d 246, 279 (2007) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).

¶ 44    To decide whether a statement is testimonial, a reviewing court must determine "whether, *** viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.' " *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). Moreover, under Illinois law, to qualify as "testimonial," a witness's statement must be (1) made in a solemn fashion and (2) intended to establish or prove some fact germane to the defendant's prosecution. *Stechly*, 225 Ill. 2d at 280-81. A court must rely on the objective circumstances surrounding the statement and not on testimony regarding the questioner's subjective intent. *Id.* at 285. A statement is intended to establish a particular fact "if the declarant is acting in a manner analogous to a witness at trial, giving information about past events that could potentially be relevant to a later criminal prosecution." *People v. Cleary*, 2013 IL App (3d) 110610, ¶ 56.

¶ 45                            2. *K.R.'s Statements*

¶ 46    Because K.R.'s statements were made in response to Deputy Ayres's questioning, there is no dispute that they were made in a solemn fashion. See, *e.g.*, *Davis v. Washington*, 547 U.S. 813, 826 (2006) ("The solemnity of even an oral declaration of relevant past fact to an investigating officer is well enough established by the severe consequences that can attend a deliberate falsehood.") (citing *Crawford*, 541 U.S. at 51). Looking at the second element, however, the primary purpose of K.R.'s statements was to establish a particular fact, *i.e.*, what happened prior to Deputy Ayres's arrival. As our supreme court stated in *Stechly*, in assessing whether a statement is testimonial, "the focus is on whether, at the time the statement was made, the witness

was acting in a manner analogous to a witness at trial, describing or giving information regarding events which had previously occurred." *Stechly*, 225 Ill. 2d at 282.

¶ 47 In *Davis*, the United States Supreme Court held that statements made in response to police questioning were nontestimonial where the primary purpose of the questioning was to "enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 813-14. However, such statements would be considered testimonial where "there is no such ongoing emergency, and *** the primary purpose of the investigation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 814. However, the court added that statements which, after the fact, "deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed," are testimonial. *Id.* at 830.

¶ 48 Here, Deputy Ayres observed the incident between defendant and K.R. as soon as he arrived at the residence, and he immediately apprehended defendant and removed him to the patrol car outside. At that point, Deputy Ayres had defused any emergency. After a short time, Deputy Ayres returned inside and asked K.R. what had happened. At that point in time, any urgency or emergency that may have existed had passed, and K.R. was providing a statement concerning what had happened, including what had led up to the events that Ayres had just witnessed. She was not reporting about events that were happening *at present* and was simply recounting what had occurred. See *id.* at 829-30 (holding that statements made to police officers at the scene of a domestic violence disturbance after the domestic altercation had ended were testimonial). In doing so, she was behaving the same as a witness on direct examination at trial. Accordingly, we conclude that K.R.'s statements were testimonial and, as a result, potentially implicated defendant's right to confrontation.

¶ 49 C. Harmless Error

¶ 50 Even if K.R.'s statements were testimonial, however, we nevertheless agree with the State that any error in their admission was harmless error. The law is well settled that *Crawford* violations are subject to harmless error review, and the test is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained. *Stechly*, 225 Ill. 2d at 304 (citing *People v. Patterson*, 217 Ill. 2d 407, 428 (2005)). When deciding whether an error is harmless, a reviewing court may: (1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence. *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008); *Stechly*, 225 Ill. 2d at 304-05 (quoting *Patterson*, 217 Ill. 2d at 428, citing *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981)).

¶ 51 In the instant case, the trial court based its rulings on Deputy Ayres's credible testimony concerning his own observations upon arriving at the residence, and further, the court specifically found defendant was not credible. As the court's written order stated:

> "Deputy [Ayres] testified he viewed the victim, [K.R.] on the couch, the Defendant's leg on [K.R.], his arm restraining [K.R.], with the Defendant's penis in his hand, stating, 'Do you like what you see then put it in your mouth.' Deputy [Ayres] testified [K.R.] was waiving [*sic*] her arm in the air trying to push [Defendant] away. Deputy [Ayres] testified that the Defendant's penis, in his hand, was approximately three feet away from [K.R.], who was seated on the couch at the time."

Thus, the court's findings indicate that it was able to find defendant guilty based on what Ayres personally saw and overheard, without considering any statements by K.R. Thus, the three factors

of *Rolandis G.* are all present and support our conclusion that any error was harmless—the statement did not contribute to the conviction; other properly admitted evidence overwhelmingly supported the conviction (Deputy Ayres's testimony); and even if improperly admitted, the evidence was merely cumulative or duplicate of properly admitted evidence. *Rolandis G.*, 232 Ill. 2d at 43.

¶ 52        Finally, although one of the comments made by K.R.—concerning whether defendant placed his penis in her mouth—was not addressed by Deputy Ayres's trial testimony, we cannot reasonably say that it contributed to or played any role in defendant's conviction. In her prior statement, K.R. told Deputy Ayres that defendant "was not able to put his penis into her mouth." That statement, if anything, *benefited* defendant, as it provided justification for the trial court's decision to find defendant guilty of the lesser-included crime of attempted aggravated criminal sexual *abuse*, rather than aggravated criminal sexual *assault*, with which defendant was initially charged. This makes it even more clear that defendant's conviction rests primarily on Deputy Ayres's own eyewitness testimony and not K.R.'s statements relayed through him.

¶ 53        Accordingly, we find that admission of K.R.'s testimonial statements to Deputy Ayres was harmless beyond a reasonable doubt.

¶ 54                                III. CONCLUSION

¶ 55        For the reasons stated, we affirm the trial court's judgment.

¶ 56        Affirmed.